J-S54002-19
J-S54003-19

2022 PA Super 220

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
v. :
:
BRENDAN PATRICK YOUNG : No. 2088 MDA 2018

Appeal from the Order Entered November 21, 2018
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000784-2018,
CP-14-CR-0001389-2017, CP-14-CR-0001540-2018

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
v. :
:
DANIEL CASEY : No. 2089 MDA 2018

Appeal from the Order Entered November 21, 2018
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000781-2018,
CP-14-CR-0001377-2017, CP-14-CR-0001536-2018

BEFORE: BOWES, J., LAZARUS, J., and DUBOW, J.

OPINION BY BOWES, J.: **FILED: DECEMBER 23, 2022**

The Commonwealth of Pennsylvania has appealed from the order that,

*inter alia*, granted the motion to suppress evidence obtained from the cellular

phones of defendants Brendan Patrick Young and Daniel Casey (collectively

"Appellees"). We affirm.

The suppression court offered the following summary of the facts that

gave rise to the charges pending in these cases:

The evidence at the first preliminary hearing indicated that on the night of February 2, 2017, the [Penn State chapter of the Beta Theta Pi] fraternity held a bid acceptance night for the purposes of welcoming fourteen individuals as pledges who sought to join the fraternity. Of these fourteen pledges, twelve were under the age of 21. After a bid acceptance ceremony, the pledges were then directed through the stations of the "gauntlet" where they were encouraged to hurry through six stations and drink alcohol at each station. After completing the gauntlet, the pledges attended a social in the basement of the fraternity house and were joined by a women's organization called Trilogy. During that social event, one of the pledges, Timothy Piazza, falls down the basement stairs. Several fraternity brothers carried Mr. Piazza up the stairs and placed him on a couch in the "Great Hall". As the brothers carried Mr. Piazza upstairs, a large bruise is visible on the left side of Mr. Piazza's abdomen. Detective David Scicchitano, who reviewed extensive video evidence of the time at issue, testified that the video shows Mr. Piazza roll off the couch at around 7:00 a.m. Mr. Piazza eventually gets to his feet, staggers around and disappears after heading toward the basement stairs. After that point, Mr. Piazza is not seen on video for over two hours. Mr. Piazza was found lying in the basement and was carried upstairs and placed, once again, on a couch in the Great Hall. About 41 or 42 minutes after finding Mr. Piazza in the basement, a fraternity brother called 911. Mr. Piazza died on February 4, 2017 from his injuries.

The evidence related to Daniel Casey at the first preliminary hearing indicated that he was the Administrative Vice President of the fraternity in the spring of 2017. Mr. Casey was also the pledge master in the spring of 2017 and had previously served as the assistant pledge master. Prior to the bid acceptance ceremony, Mr. Casey sent texts to one of the fraternity brothers asking him to purchase specific types and quantities of alcohol. Mr. Casey sent a text message to each of the fourteen pledges on February 2, 2017, directing them to arrive at the fraternity house at 9:07 p.m. After the pledges were led into the basement, Mr. Casey entered the basement and, along with his assistant, Joseph Sala, lined up the pledges. The pledges were instructed to pass a bottle of vodka down the line and that the last pledge would have to finish the bottle. Because of the amount of vodka left, the pledges were instructed to pass the bottle again. During the gauntlet, Mr. Casey was in charge of the vodka station, which was the first

station the pledges went through. Mr. Casey also handed a beer to a pledge after the gauntlet had ended.

The evidence related to Brendan Young at the first preliminary hearing indicated that he was the President of the fraternity in the spring of 2017. Mr. Young had previously served as the pledge master for the fraternity at the time that Mr. Casey was serving as assistant pledge master. Text messages between Mr. Young and Mr. Casey indicate that they planned the spring of 2016 gauntlet together. Mr. Young sent texts to a fraternity brother in the fall of 2016, asking that brother to purchase alcohol for bid acceptance night that semester. Mr. Young also sent texts indicating that he had set up the obstacle course for the fall of 2016. The texts from Mr. Young's phone indicate Mr. Young was aware that a pledge named Kordel Davis fell and was injured during bid acceptance night in the fall of 2016. Though Mr. Davis did not complete the obstacle course, he showed up afterwards and was encouraged to drink quickly to catch up with his fellow pledges. Also during bid acceptance night in the fall of 2016, Mr. Young texted a fraternity brother stating that a pledge vomited a lot. In January of 2017, when Mr. Casey took over as pledge master, Mr. Young texted Mr. Casey "I know you know this. If anything goes wrong with the pledges this semester, then both of us are f***ed." That same day, Mr. Young also texted Mr. Casey that "I'm thinking I'll be heavily involved with pledging." During the spring of 2017 gauntlet, Mr. Young was observed standing near the vodka station and then later observed near the beer shotgun station.

Suppression Court Opinion, 11/21/18, at 5-7 (cleaned up).

Police obtained the video files taken inside the residence through a warrant issued on February 8, 2017. That warrant sought the video data created from cameras inside the Beta Theta Pi fraternity house, files which were stored on devices already within the possession of the police. The description of items to be searched was specifically limited on the face of the warrant to recordings of "the events of the night of 2/2/2017 through the

morning of 2/3/2017." N.T. Pre-trial Motions, 10/22/18, at 26-28, Exhibit C-11 ("video warrant"). The video warrant also on its face indicated that Detective Scicchitano's three-page affidavit of probable cause was attached thereto. *Id*.

The police obtained the text messages discussed above from Mr. Young's phone by a warrant issued on March 1, 2017 ("Young warrant"). The Young warrant identified the "items to be searched for and seized" as follows:

> A cellular phone belonging to Brendan Young to include all of the phone's passwords and/or encryption codes; all data stored electronically, digitally or by any other method, which is contained and stored with this cellular phone associated with Brendan Young's phone. This data includes, but [is] not limited to, all sent/received text/SMS messaging and MMS messaging, pictures/images and/o videos and all call data logs for incoming/outgoing/dialed and missed phone calls stored within the cellular phone and micro SD memory device storage within said phone; all emails sent/received; all social media messaging; all internet searches.

Response to Motion to Suppress Physical Evidence (Young), 10/16/18, at Appendix A (Young warrant). Unlike the video warrant, there was no time or date range provided for any of the materials identified in the Young warrant. Also in contrast with the video warrant, the box next to the statement "Probable Cause Affidavit(s) MUST be attached (unless sealed below). Total number of pages: ____" was not checked, and the number of pages for the affidavit was not supplied. *Id*. Instead, the warrant indicated below the magistrate's authorization that the affidavits of probable cause were sealed for sixty days. *Id*. The warrant for the search of Mr. Casey's phone ("Casey

warrant") is identical in all material respects, and similarly produced evidence offered by the Commonwealth at the preliminary hearings.[1]  **See** Response to Motion to Suppress Physical Evidence (Casey), 10/16/18, at Appendix A.

Thereafter, Appellees were ultimately charged with multiple counts of recklessly endangering another person ("REAP"), hazing, alcohol-related violations, and conspiracy.[2]  Mr. Young filed an omnibus pre-trial motion which included a motion to suppress cell phone evidence based upon the Fourth Amendment to the United States Constitution and Article I, § 8 of the Pennsylvania Constitution on multiple bases.  Of relevance to this appeal, Mr. Young asserted that the warrant permitting the search of his phone lacked particularity and was instead an invalid "general warrant that authorize[d] 'a general exploratory rummaging in a person's belongings.'"  Omnibus Pretrial Motions (Young), 8/16/18, at ¶ 26(M) (quoting **Coolidge v. New Hampshire**, 403 U.S. 443, 467 (1971)).  In the accompanying brief, Mr. Young expressly included an unconstitutional overbreadth argument in support of suppression. **See** Brief in Support of Omnibus Pretrial Motions, 8/16/18, at 23-24.

The Commonwealth filed a brief in opposition to the suppression of the evidence obtained from Mr. Young's phone.  Therein, the Commonwealth

---

[1] Accordingly, in our analysis *infra* we do not separately discuss the Casey warrant.

[2]  The Office of the Attorney General took over prosecution of the cases in January 2018 after the newly-elected District Attorney asserted a conflict of interest.

advocated that the Young warrant contained sufficient particularity, and also provided extensive argument that the warrant was not overbroad. *See* Response to Motion to Suppress Physical Evidence (Young), 10/16/18, at 15-20.

Mr. Casey, in his omnibus pretrial motions, sought suppression of the contents of his phone on the basis that compelling him to provide his passcode violated his Fifth Amendment rights and exceeded the scope of the warrant. *See* Omnibus Pretrial Motion (Casey), at ¶¶ 49-60. While his motion did not include an overbreadth challenge to the Casey warrant, he did expressly request therein to join the pre-trial motions of the other related defendants.[3] *Id*. at ¶¶ 101-102.

The suppression court scheduled a joint hearing on the pretrial motions of Appellees, and others charged in connection with Mr. Piazza's death, to take place beginning on October 22, 2018. At the outset of the hearing, the court asked the Commonwealth whether it objected to the defendants' requests to join each other's motions. *See* N.T. Pre-trial Motions, 10/22/18, at 7. The Commonwealth did not generally object, expressing its anticipation that the Court's rulings would be applied consistently to all defendants and its belief that "every issue here has been very thoroughly . . . briefed in a tremendous

---

[3] The hearing on pre-trial motions involved Appellees as well as other defendants. By order dated October 25, 2018, the three dockets involving Mr. Young were consolidated for trial with the three dockets involving Mr. Casey, and severed from dockets involving four other defendants.

amount of detail." *Id*. However, it did object to defendants joining suppression motions "in which there is only expectation of privacy and there is only standing with respect to Mr. Casey and Mr. Young. So those motions would be applicable only to Mr. Casey and Mr. Young." *Id*. at 7-8.

During the course of the hearings, Mr. Casey only presented evidence as to his Fifth Amendment claim. N.T. (Pre-trial Motions) 10/23/18, at 13. Mr. Young called Detective Scicchitano to testify about whether "there was sufficient probable cause to link criminality to Mr. Young's phone," and therefore intended to "ask questions about the contents of the four corners of the affidavit." *Id*. at 48. Following the testimony, the Commonwealth discussed Mr. Young's particularity and overbreadth claims, noted that it addressed the issues in its brief, and indicated that it would rely on the brief rather than present oral argument. *Id*. at 84-85.

The suppression court disposed of Appellees' pre-trial motions by opinion and order filed on November 21, 2018. Therein, the court granted Mr. Young's motion to suppress the cell phone evidence due to the overbreadth of the Young warrant. *See* Suppression Court Opinion, 11/21/18, at 31. Further, since the Casey warrant contained the same language, and because the Commonwealth did not object to Mr. Casey's request to join the pre-trial motions of the other defendants, the court suppressed the evidence taken from Mr. Casey's phone for the same reason, *i.e.*, overbreadth. *Id*.

The Commonwealth moved for reconsideration. In its motion, the Commonwealth contended that Appellees waived the overbreadth claim by not litigating it, that it had objected to Mr. Casey joining Mr. Young's motion, that the evidence was not suppressible because neither Appellee had a reasonable expectation of privacy in the contents of the other's phone, and that the warrant was not overbroad. **See** Motion to Reconsider Motion to Suppress, 12/3/18, at 4. The suppression court held a hearing on the motion on December 11, 2018, at the conclusion of which it took the matter under advisement.

The court entered an order denying the Commonwealth's motion for reconsideration on December 18, 2018. The Commonwealth filed one timely notice of appeal for each Appellee, listed all three applicable docket numbers, and both it and the suppression court complied with Pa.R.A.P. 1925.[4] This Court issued *per curiam* orders directing the Commonwealth to show cause why the appeals should not be quashed in light of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018) (holding that when "one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeals must be filed"). Following a response by the Commonwealth, the rule was discharged and the issue was referred to

---

[4] The Commonwealth certified in its notices of appeal that the appealed-from order would substantially handicap the prosecution. Accordingly, we exercise jurisdiction over these interlocutory appeals pursuant to Pa.R.A.P. 311(d).

the merits panel for disposition. The instant panel determined that the Commonwealth failed to establish that its single notices were sufficient under the prevailing caselaw and quashed both appeals.

Our Supreme Court granted allowance of appeal and partially overruled **Walker**, holding that the Commonwealth's failure to file separate notices of appeal at each docket number did not necessarily require quashal. **See Commonwealth v. Young**, 265 A.3d 462, 476 (Pa. 2021) ("**Young I**").[5] Rather, the filing of a single notice of appeal for all implicated docket numbers was a non-jurisdictional defect that the Commonwealth could remedy pursuant to Pa.R.A.P. 902. The Court then returned the cases to us to determine whether the Commonwealth should be permitted to correct its **Walke**r violations through Rule 902. **Id**. at 477-78. After considering the issue, we remanded for the Commonwealth to correct its procedural error by filing the additional notices of appeal. **See Commonwealth v. Young**, 280 A.3d 1049, 1057 (Pa.Super. 2022) ("**Young II**"). The Commonwealth timely did so, and we are now able to address the substance of these appeals, both of which involve the following question:

> Whether the lower court's grant of suppression was in error where the court (1) failed to determine that the specific grounds on which relief was granted was waived, (2) failed to find that evidence derived from text message conversations is not suppressible against the parties to the conversation[,] and (3) granted

---

[5] Although the citation for the case is **Young**, the decision was rendered in both of the cases presently before us.

suppression based on facts not supported by the record and by improperly applying the law to the facts?

Commonwealth's brief at 4 (unnecessary capitalization omitted).[6]

We begin our consideration of the Commonwealth's questions with the applicable standard of review:

> We review trial court suppression orders to determine whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record. In reviewing an appeal by the Commonwealth of a suppression order, we may consider only the evidence from the defendant's witnesses along with the Commonwealth's evidence which remains uncontroverted. Our scope of review of suppression court factual findings is limited to the suppression hearing record.[7] We, however, are not bound by a suppression court's conclusions of law; rather, when reviewing questions of law, our standard of review is *de novo* and our scope of review is plenary.

***Commonwealth v. Anderson***, 276 A.3d 282, 292 (Pa.Super. 2022).

The Commonwealth initially argues that Appellees waived the overbreadth issue upon which the suppression court based its ruling. Serially, the Commonwealth asserts that Mr. Young did not plead the issue with sufficient particularity to satisfy Pa.R.Crim.P. 581(D), that Mr. Young at the omnibus pretrial hearing limited his suppression claim solely to whether there

---

[6] The Commonwealth's briefs as to Mr. Young and Mr. Casey are materially identical. For ease of discussion, rather than provide parallel citations to each brief, we opt to reference only the brief filed in the ***Young*** appeals.

[7] The Commonwealth specifically incorporated the preliminary hearing transcripts into the record at the suppression hearing. ***See*** N.T. Pre-trial Motions, 10/22/18, at 131-32.

- 10 -

was sufficient probable cause to support the warrant, and that the Commonwealth did in fact object to Mr. Casey joining Mr. Young's suppression motion. *See* Commonwealth's brief at 13-19.

The suppression court rejected each of these waiver arguments, and we agree. First, Rule 581(D) provides that motions for the suppression of evidence must "state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." Pa.R.Crim.P. 581(D). "In the extreme case, a complete failure to comply with the specificity requirements of Rule 581(D) will result in waiver, as those requirements have been held to be mandatory." *Commonwealth v. Dixon*, 997 A.2d 368, 376 (Pa.Super. 2010) (*en banc*).

As detailed above, Mr. Young's suppression motion and brief in support thereof stated the evidence he wished to suppress (the evidence obtained from his cell phone), and stated the grounds for suppression (overbreadth and lack of particularity in violation of both the Fourth Amendment to the U.S. Constitution and Article I, § 8 of the Pennsylvania Constitution). *See* Omnibus Pretrial Motions (Young), 8/16/18, at ¶ 26(M); Brief in Support of Omnibus Pretrial Motions (Young), 8/16/18, at 23-24. Mr. Young additionally discussed the foundational facts and applicable law. *See* Omnibus Pretrial Motions (Young), 8/16/18, at ¶ 26(J)-(M); Brief in Support of Omnibus Pretrial Motions (Young), 8/16/18, at 23-24. Furthermore, the Commonwealth plainly comprehended that overbreadth was at issue, as it provided extensive

argument in opposition of that claim in its written response to the motion. *See* Response to Motion to Suppress Physical Evidence (Young), 10/16/18, at 15-20. Accordingly, we agree with the suppression court that the Commonwealth's reliance upon an alleged violation of Rule 581(D) is meritless. *See* Suppression Court Opinion, 12/18/18, at 2.

Second, while the Commonwealth is correct that Mr. Young only presented evidence at the pretrial motions hearing as to a different basis for suppression, the transcript does not support the Commonwealth's contention that it understood the remainder of Mr. Young's suppression issues to have been abandoned. As recounted above, the Commonwealth discussed Mr. Young's particularity and overbreadth claims after Mr. Young presented his suppression-related evidence, observed that it had addressed the issues in its brief, and informed the court that it would rely on the brief rather than offer oral argument. *See* N.T. Pre-trial Motions, 10/23/18, at 84-85. Since overbreadth is a legal issue that is based solely on the face of the affidavit, no additional evidence was necessary to preserve that issue. Thus, we are unpersuaded by the Commonwealth's abandonment argument.

Third, we agree with the suppression court that the Commonwealth is not entitled to relief based upon any objection to Mr. Casey's request to join Mr. Young's motion. As the court explained:

> Upon review of the omnibus pre-trial motions hearing transcript, the court finds the record is unclear whether the Commonwealth was objecting to Mr. Casey joining in Mr. Young's motions, or

whether the Commonwealth's objection was to any of the other four defendants joining in motions to suppress the phones belonging to Mr. Casey and Mr. Young. The attorney for the Commonwealth stated he had no objection to the motions to join,

> with the obvious exception being there is motion to suppress physical evidence, which there is only expectation of privacy and there is only standing with respect to Mr. Casey and Mr. Young. So those motions would be applicable only to Mr. Casey and Mr. Young.

N.T. Motions Hearing, 10/22/18, at 7-8. The court then granted the motions to join in the motions of others. When the parties argued the motions to suppress physical evidence regarding the cell phones, counsel for Mr. Young rested on his brief for the majority of his arguments.

> The Commonwealth was not clear that it was asking to prevent Mr. Young and Mr. Casey from joining in each other's motion to suppress physical evidence, therefore the court did not specifically grant or deny the motion to join as it pertained to the motion to suppress physical evidence, but only broadly granted the motions to join. The court has already found that Mr. Young clearly raised the issue of overbreadth in his own omnibus pre-trial motion. As the search warrants for both cell phones are identical in their language regarding the scope of the search, the Commonwealth has had an adequate opportunity to respond to the overbreadth argument regarding these warrants. The court finds Mr. Casey did not waive his right to challenge the search warrant for his phone as overbroad.

Suppression Court Opinion, 12/18/18, at 2-3 (cleaned up).

The suppression court's determination is supported by the certified record, and is not the product of bias, ill-will, or any other abuse of discretion. On the contrary, the court's determination is fair and reasonable in light of the Commonwealth's indications at the suppression hearing that (1) all of the issues raised in the written motions had been thoroughly briefed; and (2)

- 13 -

while it objected to attorneys standing up and arguing issues they did not independently raise because they would not have been included in the briefing, it did not "have any problem with the ultimate ruling applying to all of the defendants." N.T. Pre-trial Motions, 10/22/18, at 9. Thus, we do not find cause to disturb the suppression court's ruling.

Having concluded that none of the Commonwealth's waiver arguments warrants reversal, we turn to the Commonwealth's next claim of error. Therein, the Commonwealth contends that the evidence was not subject to suppression because neither Appellee had an expectation of privacy in the contents of the other's phone. In support, the Commonwealth relies upon this Court's decision in *Commonwealth v. Diego*, 119 A.3d 370, 378 (Pa.Super. 2015), in which we held that, "[w]hen an individual sends a text message, he or she should know that the recipient, and not the sender, controls the destiny of the content of that message once it is received." *See* Commonwealth's brief at 19.

As Mr. Young aptly notes, the key fact in the *Diego* case was "that the other party to the conversation shared the conversation with the police." Young's brief at 18. In *Diego*, the trial court granted the defendant's motion to suppress text messages that he had exchanged with informant Gary Still that Still provided to the police. In agreeing with the Commonwealth that the defendant lacked a privacy interest in the messages that Still shared, we contrasted the circumstances of that case with others such as *Riley v.*

- 14 -

*California*, 573 U.S. 373 (2014), in which no one voluntarily provided the

messages with the authorities.  As we explained:

> In ***Riley***, the defendant's smartphone was seized incident to his arrest for firearms offenses.  The police searched the contents of the phone for evidence of gang-related activity without first obtaining a search warrant.  The Supreme Court held that the warrantless search of the contents of Riley's phone was illegal even though it was permissibly seized incident to his arrest.  In reaching this conclusion, the Supreme Court held, *inter alia*, that modern smartphones are qualitatively different from other items typically seized during an arrest due to the privacy implications arising from the cornucopia of information that can be contained in, or immediately accessed from, such devices.  Summarizing its holding, the Supreme Court explained:
>
>> Modern cell phones are not just another technological convenience.  With all they contain and all they may reveal, they hold for many Americans "the privacies of life."  The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought.  Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant.
>
> Here, Appellee's reliance on ***Riley*** is simply misplaced.  The police did not obtain the contents of Appellee's text message conversation with Still by searching Appellee's phone incident to his arrest.  Indeed, the police did not obtain a recording of that conversation from Appellee at all.  Thus, the heightened expectation of privacy recognized in ***Riley*** is not applicable to this case.

***Diego***, ***supra*** at 378 (cleaned up).

If Mr. Young had chosen to share Mr. Casey's messages with the police,

or Mr. Casey had given them Mr. Young's messages voluntarily, ***Diego*** would

control as the Commonwealth urges.  However, in the instant cases it was not

- 15 -

the recipient of the messages who controlled their destiny, but the state through exerting its power to seize the phones against the recipients' wills. We cannot agree that *Diego* warrants reversal.

Moreover, the suppression court made it clear that it has not yet ruled upon the admissibility of text messages against either Appellee obtained from a source other than his own phone. The court explained:

> The Commonwealth argues [that Appellees'] cell phones are not suppressible as Mr. Young's cell phone is admissible against Mr. Casey and Mr. Casey's cell phone is admissible against Mr. Young. [Appellees] have no privacy interest in messages that they sent to another individual's phone. As a result, neither [Appellee] would have standing to seek suppression of the other [Appellee's] cell phone. As clarification, the court has granted suppression of Mr. Young's cell phone as used against Mr. Young and has granted suppression of Mr. Casey's cell phone as used against Mr. Casey. The issue of whether each [Appellee's] cell phone may be admitted against the other [Appellee] would be more properly addressed during a motion *in limine*. Therefore, the court will not rule on the admissibility of the cell phone evidence against the other defendant at this time.

Suppression Court Opinion, 12/18/18, at 5 (cleaned up). Hence, we discern no cause to reverse the suppression court's ruling based upon the Commonwealth's standing argument.

Having rejected the procedural bases for reversal advanced by the Commonwealth, we turn to the substantive issue presented in these appeals: whether Appellees' suppression motions were properly granted because the warrants were unconstitutionally overbroad. We begin our consideration with a review of the pertinent constitutional principles.

- 16 -

The Fourth Amendment to the federal constitution and Article I, § 8 of the Pennsylvania constitution both prohibit unreasonable searches and seizures.[8] These foundational documents require searches to be conducted pursuant to warrants, supported by probable cause, that describe with particularity the items sought, to establish that "citizens generally enjoy protection . . . from general, exploratory searches by government actors." ***Commonwealth v. Rega***, 70 A.3d 777, 785 (Pa. 2013). However, "the purpose of the particularity requirement is not limited to the prevention of general searches. A particular warrant also assures the individual whose

_____

[8] ***See*** U.S. Const. Amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); Pa. Const. Art. I, § 8 ("The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.").

Since the Pennsylvania constitution requires not just particularity, but that the warrant "describe the items as specifically as is reasonably possible," Article I, § 8 is more stringent than the Fourth Amendment. ***Commonwealth v. Orie***, 88 A.3d 983, 1003 (Pa.Super. 2014) (cleaned up). Consequently, "if the warrant is satisfactory under the Pennsylvania Constitution it will also be satisfactory under the federal Constitution." ***Commonwealth v. Kane***, 210 A.3d 324, 333 (Pa.Super. 2019) (cleaned up). It stands to reason that the converse is also true: if a warrant is unsatisfactory under of the Fourth Amendment, it cannot satisfy the more stringent requirements of Article I, § 8. Therefore, we need not separately examine the Pennsylvania constitution in the instant appeal if the warrant fails to satisfy the requirements of the Fourth Amendment.

property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." **_Groh v. Ramirez_**, 540 U.S. 551, 561 (2004) (cleaned up).

This Court has explained that the constitutional particularity mandate "prohibits a warrant that is not particular enough and a warrant that is overbroad." **_Commonwealth v. Orie_**, 88 A.3d 983, 1002 (Pa.Super. 2014) (cleaned up). These issues are separate but related. "A warrant unconstitutional for its lack of particularity authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize. This will result in the general 'rummaging' banned by the Fourth Amendment." **_Id_**. (cleaned up). On the other hand, "[a] warrant unconstitutional for its overbreadth authorizes in clear or specific terms the seizure of an entire set of items, or documents, many of which will prove unrelated to the crime under investigation. An overbroad warrant is unconstitutional because it authorizes a general search and seizure." **_Id_**. at 1002-03 (cleaned up).

Our Supreme Court has designated that "the natural starting place in assessing the validity of the description contained in a purportedly overbroad warrant is to determine for what items probable cause existed." **_Commonwealth v. Green_**, 265 A.3d 541, 551 (Pa. 2021). Probable cause is assessed by examining the totality of the circumstances and consists of deciding whether, "given all the circumstances set forth in the affidavit . . .

there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. (cleaned up). In that vein, the search warrants must "be read in a common sense fashion and should not be invalidated by hypertechnical interpretations." *Rega*, *supra* at 1012 (cleaned up).

After establishing the scope of probable cause, "[t]he sufficiency of the description must then be measured against those items for which there was probable cause. An unreasonable discrepancy reveals that the description was not as specific as was reasonably possible." *Orie*, *supra* at 1003 (cleaned up). "Any unreasonable discrepancy between the items for which there was probable cause and the description in the warrant requires suppression." *Id*. (cleaned up). *See also Commonwealth v. Grossman*, 555 A.2d 896, 900 (Pa. 1989) (holding that suppression was required of all evidence seized upon execution of an overbroad warrant, including the items for which probable cause existed); *Commonwealth v. McKahan*, 248 A.3d 478 (Pa.Super. 2021) (*en banc*) (non-precedential decision) (affirming suppression of blood alcohol content test, for which there was probable cause, because it was obtained through an overbroad warrant that allowed police to obtain all of the defendant's medical records).

The U.S. Supreme Court has recognized that modern cellular phones have significant qualitative and quantitative differences from the sources of information that were in existence not only at the time the Fourth Amendment was adopted, but even at the start of this century. *See Riley*, *supra* at 394-

96. Our High Court recently concurred that "a cell phone often contains even more personal information than a home," and, therefore, "it logically follows that a warrant should be required to search the contents of a cell phone, just as a warrant is required to search the contents of a home." *Green*, *supra* at 553. However, the *Green* Court ruled that this does not mean that, "once obtained, a warrant to search a digital device should be held to a higher overbreadth standard than a warrant to search a home simply because of the former's storage capacity." *Id*. While "courts must be cognizant of the privacy interests associated with personal electronic devices," the same legal principles apply to each:

> [J]ust as with a search of a home and other spaces where an individual maintains a privacy interest, if there is probable cause that evidence of a crime will be found within an electronic device, that evidence should not be shielded simply because a defendant comingles it with personal information in a digital space with vast storage capacity.

*Id*. Accordingly, all warrants, be they for the search of physical or digital spaces, must "(1) describe the place to be searched and the items to be seized with specificity and (2) be supported by probable cause to believe that the items sought will provide evidence of a crime." *Id*. In sum, warrants to search digital spaces must describe "as nearly as may be those items for which there is probable cause." *Id*. (cleaned up).

We find the following authority instructive in conducting our overbreadth analysis. In *Orie*, *supra*, the authorities obtained and executed numerous

search warrants. Pertinent to these appeals, the police secured warrants to seize a flash drive. In the affidavit of probable cause for the first warrant to seize the flash drive, the affiant related that detectives had witnessed Orie's senate staff illegally engaging in political campaigning for Orie's sister Joan Orie Melvin, and that an employee indicated that scans of campaign contribution checks, and a spreadsheet compiling the donor information was saved on "a USB flash drive (black PNY 2gb with 'Polaroid' in white letters) provided by Orie.'" **Orie**, **supra** at 1004. After assuming possession of the device through execution of the first warrant, police obtained a second warrant for the flash drive seeking to search the contents of the flash drive for "databases and/or spreadsheets containing donation/contribution lists for Orie and Joan Orie Melvin, letterhead and/or masthead, thank you letters, and host committee lists." **Id**. at 1006. The affidavit for that warrant contained additional information about the campaign activities employees had engaged in and the specific types of files stored on the flash drive, including "Donations to Judge Joan Orie Melvin (with corresponding check numbers); Donation lists for Senator Jane Orie; Donation list for Judge Joan Orie Melvin; Host Committee lists; Judge Joan Orie Melvin's letterhead; Judge Joan Orie Melvin's handout layout; various thank you notes; and Senator Jane Orie's campaign letterhead." **Id**. (cleaned up).

Orie moved to suppress the evidence obtained from the flash drive, asserting that the warrants were unconstitutionally overbroad. She argued

that the "warrants were so generally investigatory or overbroad" that they "essentially allowed the District Attorney to go on a fishing expedition of items and information, most of which was constitutionally protected, privileged, or otherwise irrelevant." *Id*. at 1001 (cleaned up).  This Court agreed as to the initial affidavit upon which the devices was seized but not searched, but found that the second warrant contained sufficient particularity to pass constitutional muster:

> [W]e find the [initial] warrant for the USB flash drive, while supported by probable cause to believe the flash drive contained evidence of criminal activity, was overbroad, in that the warrant sought "any contents contained therein, including all documents, images, recordings, spreadsheets or any other data stored in digital format" **without limitation to account for any non-criminal use of the flash drive**.  Here, the attached affidavit simply recited [the employee's] current use of the flash drive for Orie Melvin's campaign-related donor lists, without more. However, this case involves unique facts that must be considered in our analysis.  Given the distinctive nature of a USB flash drive, like other types of digital storage systems (e.g., a computer hard drive), it must be seized in its entirety first and then searched at a later time (typically by someone with an expertise in this area). Moreover, in this case **a search of the contents of the USB drive was never conducted pursuant to [the initial] warrant, but rather only in accordance with the second, more detailed** . . . **warrant that provided the particularity that the earlier warrant lacked**.  Law enforcement seized the flash drive pursuant to the first warrant and searched its contents pursuant to the second warrant.  As a result, under the unique facts of this case, we find no constitutional violation.[42]
>
> _____
>
> [42] In so ruling, we do not imply that two warrants are required to seize and search the contents of computer hard drives, flash drives and other digital storage devices, or that the Commonwealth's decision in this case to obtain two warrants is the preferred approach with respect to such searches and seizures. To the contrary, the necessary

- 22 -

specificity regarding the items to be seized and the files to be searched should all be set forth in an initial warrant (such that a second warrant is unnecessary). In other words, in the absence of exigent circumstances, the seizure and search of digital storage devices should be conducted in accordance with the limitations set forth in a single warrant, with those limitations based upon the extent of probable cause established in the accompanying affidavit.

*Id*. at 1008 (emphases added).

The **Orie** decision contrasted that of the federal district court in **United States v. Wecht**, 619 F.Supp.2d 213 (W.D. Pa. 2009), a case upon which Orie had "relie[d] heavily on" in arguing that the warrant was defective. **Orie**, **supra** at 1009. In **Wecht**, the FBI investigated Dr. Cyril Wecht, the Allegheny County coroner, for crimes based upon his alleged use of public resources to conduct a private pathology business. The investigation included execution of a warrant to seize a laptop computer of Wecht's executive assistant, Ms. Young. The warrant referred to "Attachment B" for a description of the property to be seized. Attachment B provided as follows: "A laptop computer manufactured by Dell, and all information and data contained therein, including data stored on any associated data storage devices such as zip drives, discs (of any kind including cd and hard), and back-up tapes." **Wecht**, **supra** at 240.

Wecht argued that this amounted to a verboten general warrant. However, the court rejected that classification, explaining that "the law in this circuit distinguishes between, on one hand, general warrants—which involve

primarily the problem of ambiguity and insufficient guidance as to the objects to be seized and, on the other, overbroad warrants—which provide the executing officer sufficient specificity but authorize the seizure of too many items." *Id*. at 241. Accordingly, the appropriate inquiry was whether there was an unreasonable discrepancy between the items authorized to be seized pursuant to the warrant and the probable cause that supported the warrant's issuance.

The court determined that the affidavit proffered in applying for the warrant supported probable cause of substantial scope. It indicated

> that the laptop was the primary repository of information which would evidence [Wecht's] misappropriation of a particular county employee's (*i.e.*, Ms. Young's) time and services. Indeed, given the allegation that Ms. Young spent virtually all of her [public employment] time working on behalf of Wecht['s private business], the investigating agents could reasonably expect to find an abundance of incriminating evidence stored on the laptop. Moreover, considering that the essence of the alleged wrongdoing, insofar as Ms. Young is concerned, was the theft of her time and services, the Government had a legitimate interest in knowing not only the extent of work which Ms. Young had generated for [Wecht's] private benefit while acting in her capacity as an [Allegheny County] employee, but also the extent of work, if any, which she had generated on behalf of Allegheny County.

*Id*. at 242.

Nonetheless, the court ruled that the warrant was impermissibly overbroad because the probable cause established by the affidavit was not "coextensive with **all** of the computer's contents." *Id*. (emphasis in original). The court observed that:

- 24 -

the law recognizes a distinction between the seizure of computer equipment on one hand and, on the other hand, the seizure of information stored within the computer equipment:

The cases and commentary draw a distinction between the electronic storage device itself and the information which that device contains. Thus, when the government seeks to seize the information stored on a computer, as opposed to the computer itself, that underlying information must be identified with particularity and its seizure independently supported by probable cause.

*Id*. at 247 (cleaned up). Applying this distinction to the circumstances at hand, the court held as follows:

Here, it is important to recognize that the Government's interest in the laptop was not so much in the equipment *per se* but, rather, in accessing the files stored within the computer which, the Government believed, would evidence the misappropriation of Ms. Young's time and services. That being the case, the warrant was required to state with reasonable particularity which files it was authorizing the Government to seize.

. . . .

Ultimately, in determining whether the Laptop Warrant was sufficiently particularized, the pertinent inquiry is whether [the FBI agent's] affidavit established probable cause not only to search but to seize outright every single piece of information stored within the laptop and its associated storage devices. I conclude, for the reasons previously discussed, that the laptop warrant was overbroad in that the supporting affidavit did not support the *en masse* seizure of all information and data contained on the laptop computer and its peripheral storage devices.

*Id*. at 247–48 (citations omitted).

Our Supreme Court in **Green**, **supra**, recently considered overbreadth in connection with a warrant to search electronic devices. In that case, the police discovered that child pornography files had been shared from a

computer with an IP address associated with Green's residence. Consequently, the police sought a search warrant for that address. In addition to discussing the particular incident in question, the affidavit of probable cause further detailed the training and experience of the investigators, and "explained that individuals involved in the sharing and downloading of child pornography usually maintain their collections in the privacy and security of their own home," and maintain the collections for a long time. **_Green_**, **_supra_** at 545, 554. Based upon this experience, the affiant indicated that police were likely to need "to seize all electronic storage devices (along with related peripherals) to be searched later by a qualified computer expert in a laboratory or other controlled environment." **_Id_**. at 545–46 (cleaned up). The investigators thus applied and received authorization for a warrant that identified the items to be searched and seized as follows:

> Any and all computer hardware, including, but not limited to, any equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical or similar computer impulses or data. Any computer processing units, internal and peripheral storage devices, (such as fixed disks, eternal hard disks, floppy disk drives, and diskettes, tape drives, tapes, and optical storage devices), peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers), and related communication devices such as modems, cables, and connections, recording equipment, as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware. **These items will be seized and then later searched for evidence relating to the possession and/or distribution of child pornography.** This search is also to include any and all cellular phones, including, but not limited to, any cellular device that can collect, analyze, create, convert, store, conceal, transmit electronic data, and the

> items associated with any cellular device such as power cords, bases, sim cards, and memory cards.

*Id*. at 546 (cleaned up, emphasis in original). The execution of the warrant produced scores of images of child pornography, and Green was ultimately convicted of ninety-nine possessory offences related thereto.

In his direct appeal, Green challenged the trial court's denial of his motion to suppress the evidence obtained through the warrant, arguing that it was unconstitutionally overbroad. Relevant to the instant appeals, Green asserted that the warrant to search the contents of the devices seized was overbroad because it did not include specific types of programs or files, and was not limited to certain dates, and, as such, "allowed for the prohibited 'rummaging' through all files on all seized devices, nearly all of which contained private, non-criminal material." *Id*. at 554 (cleaned up).

The Court began its analysis by ascertaining the scope of the probable cause. It observed that the affidavit contained information to support the belief that the sharer of pornography from Green's residence was likely to have a collection of material that had been maintained over time on digital storage devices. It then compared that with the scope of search authorized by the warrant. Since the probable cause was not limited to the date of the single documented file sharing, "the warrant did not need to include a specific date, type of file, or program in order to satisfy the requirement to describe the items as nearly as may be." *Id*. The Court also rejected Green's claim

that the warrant improperly authorized the officers to search the personal, non-criminal information contained on the devices. Contrasting the warrant with that at issue in *Orie*, the Court opined that the case was "not one where officers were given free rein to look at anything within the phone to generally look for evidence of a crime." *Id*. Instead, by its express terms, the warrant only permitted the police to search for evidence of the particular crime detailed in the affidavit of probable cause, namely the possession and/or distribution of child pornography. Hence, the warrant did not allow authorities to "indiscriminately rummage through any and all files as [Green] suggest[ed], but rather could only conduct a digital forensic search by a qualified computer expert in a laboratory or other controlled environment and only for evidence of child pornography." *Id*. at 555 (cleaned up). Accordingly, the Court was

> satisfied that the limiting language provided in the warrant and supported by the affidavit of probable cause was specific enough that rummaging would not be permitted, nor would this warrant be used as a general investigatory tool. Because we find that the warrant sufficiently described the items for which there was probable cause, it was not overbroad.

*Id*.

Mindful of this precedent, we turn to the particulars of the cases at issue in these appeals. Here, the affidavits of probable cause detailed the condition of Mr. Piazza when first responders encountered him on the morning of February 3, 2017, the initial interactions of State College police with Mr. Young at that time, and the general summary of the events within the fraternity

house from the time of the bid acceptance event to the time the authorities arrived. *See* Response to Motion to Suppress Physical Evidence (Young), 10/16/18, at 2-3 of Appendix A. The affidavit recounted how, through the videos and interviews, the police established that the pledges received two text messages requiring them to be at the house by a certain time in certain attire, and that they thereafter went through the stations of "the gauntlet" described at the outset of this writing. The affidavit further described information that fraternity members were instructed to delete their group text messages from their phones, that Mr. Casey participated in a coverup before the ambulance came for Mr. Piazza by putting a shirt on him and wiping his mouth, that Mr. Young was seen to be pacing back and forth in the area during this time, using his cellular phone and then participating in cleaning up the house in anticipation of the arrival of the authorities. *Id*. at 4-5 of Appendix A. The affidavit then stated as follows:

> Based on this aforementioned information your affiant is requesting a search warrant for Brendan Young's unlocked cellular telephone in order to seize and forensically recover any and all photographs and/or videos taken by Young between 2/2-2/3/2017 involving the bid acceptance party and aftermath. Additionally, your affiant seeks to forensically recover, if possible using available software programs, existing and deleted electronic communications between the pledges and members of the fraternity concerning the hazing of pledges, the consumption of alcohol by minors, the fall and neglected care of their inebriated pledge, Tim Piazza, the plan to attempt to mask the severity of his injuries and/or the responsibility of the Beta Fraternity, and any fraternity/member directives to its members or its pledges concerning their involvement in hazing, furnishing alcohol, Piazza's death, and their attempts to cover it up.

- 29 -

Response to Motion to Suppress Physical Evidence (Young), 10/16/18, at 5 of Appendix A (affidavit of probable cause).

However, the warrant issued by the magistrate did not limit the scope of the search to the time surrounding the bid acceptance party or Mr. Piazza's injury. Nor did it limit the search to communications among fraternity members, pledges, and others connected with the crimes being investigated. Rather, it authorized police to examine and keep the entire contents of the phone, including any and all videos taken at any point in time, and any and all messages sent or received from any person at any time about any subject. Again, the warrant identified the items to be searched and seized as follows:

> A cellular phone belonging to [Mr. Young] to include all of the phone's passwords and/or encryption codes; all data stored electronically, digitally or by any other method, which is contained and stored with this cellular phone associated with [Mr. Young]. This data includes, but [is] not limited to, all sent/received text/SMS messaging and MMS messaging, pictures/images and/or videos and all call data logs for incoming/outgoing/dialed and missed phone calls stored within the cellular phone and micro SD memory device storage within said phone; all emails sent/received; all social media messaging; all internet searches.

Response to Motion to Suppress Physical Evidence (Young), 10/16/18, at Appendix A (Young warrant).

The suppression court acknowledged that probable cause existed to support warrants authorizing the search of the phones of Mr. Young and Mr. Casey for the items requested in the affidavit. We agree that Detective Scicchitano's affidavits established probable cause to search for the specific

- 30 -

items requested therein, namely videos of the bid acceptance party and its aftermath taken on February 2 and 3, 2017, and communications between the pledges and members of the fraternity about hazing, alcohol, and Mr. Piazza's injury. The video evidence and interviews gave rise to a reasonable belief that evidence pertinent to the party and Mr. Piazza's injury would be found in the phones' data, including in the messages shared among the members and pledges. However, since the face of the warrant itself authorized the search and seizure of the entire contents of the phones, the suppression court ruled that the warrant was unconstitutionally overbroad:

> [T]he description included in the warrant is far more general than was necessary. Under the warrant as written, the police were authorized to access all data on [each Appellee's] cell phone. This is not limited to only information pertinent to the police investigation regarding Timothy Piazza's death and alleged hazing at the Beta Theta Pi fraternity, but would include all data[, much of which] was entirely irrelevant to the investigation.

Suppression Court Opinion, 11/21/18, at 30.

We agree, and note that the Commonwealth does not disagree that the language of the warrant itself authorized a search beyond what is supported by probable cause. *See*, *e.g.*, N.T. Motion for Reconsideration, 12/11/18, at 12 (acknowledging that the warrant and the affidavit of probable cause "say different things"). Indeed, as the descriptions on the face of the warrant were not tied to the specific facts that caused Detective Scicchitano to connect Appellees' phones to the crimes being investigated, they are analogous to the initial, overbroad warrants discussed in *Orie* which we

- 31 -

deemed sufficient to permit the initial seizure of the devices, but insufficient to justify the subsequent search and seizure of files within them. *Cf. Green*, *supra* at 554 ("This case, however, is not one where officers were given free rein to look at anything within the phone to generally look for evidence of a crime.").

Rather, the Commonwealth's position is that the suppression court should have considered the limiting language of the affidavit in deciding whether the warrant authorized too broad a search and seizure. *See* Commonwealth's brief at 29. In essence, the Commonwealth asserts that the face of the warrants permitted the seizure of the phones of Messrs. Young and Casey akin to the initial, broad warrant in *Orie*, and that the affidavits of Detective Scicchitano served the function of the subsequent, narrower warrant in *Orie* to detail which files the police would seek out within the devices. *See* Commonwealth's brief at 28-29*;* N.T. Motion for Reconsideration, 12/11/18, at 12 ("Detective Scicchitano was more specific [in the affidavit] with the things that he would look for within the item that he would seize and search."). In other words, the Commonwealth maintains that consideration of the contents of the affidavit of probable cause was required not only in the initial part of the overbreadth analysis, *i.e.*, determining "for what items probable cause existed," but also in the second phase in which the court must "look to see whether the warrant described as nearly as may be those items for which there is probable cause." *Green*, *supra* at 551, 554 (cleaned up).

Our ultimate task is to determine if there was "[a]ny unreasonable discrepancy between the items for which there was probable cause and the description in the warrant." *Orie*, *supra* at 1003. The salient question before us is whether the description in the warrant necessarily includes the description of items supplied in the affidavit of probable cause when not reproduced or expressly incorporated on the face of the warrant. For the reasons that follow, we answer this question of law in the negative and conclude that the suppression court properly held that the instant warrants were invalid based upon unconstitutional overbreadth.

To answer this question, we review the authority relevant to the relationship between the warrant and its supporting documents for purposes of an overbreadth challenge. The U.S. Supreme Court addressed this issue in *Groh*, *supra*. In that case, there was no question that the warrant at issue "was based on probable cause and supported by a sworn affidavit, and it described particularly the place of the search," but it did not provide a description of the type of evidence to be secured. *Id*. at 557. However, the application for the warrant supplied the detail missing from the face of the warrant itself. The High Court rejected the notion that this satisfied the requirements of the Fourth Amendment, explaining as follows:

> The fact that the **application** adequately described the "things to be seized" does not save the warrant from its facial invalidity. The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents. And for good reason: The presence of a search warrant serves a high

function, and that high function is not necessarily vindicated when some other document, somewhere, says something about the objects of the search, but the contents of that document are neither known to the person whose home is being searched nor available for her inspection. We do not say that the Fourth Amendment prohibits a warrant from cross-referencing other documents. Indeed, most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant. But in this case the warrant did not incorporate other documents by reference, nor did either the affidavit or the application (which had been placed under seal) accompany the warrant.

*Id*. at 557-58 (cleaned up, emphasis in original). Consequently, even though the items were described with particularity in the warrant application and the officers limited the scope of the search accordingly, the warrant was invalid and the search was in effect warrantless. *Id*. at 558.

An examination of federal court decisions regarding the incorporation of supporting documents into the warrant itself reveals that the courts will deem the warrant to be limited by the narrowly-tailored supporting affidavit if it is expressly incorporated by reference on the face of the warrant and accompanies the warrant.[9] *See*, *e.g.*, *United States v. Tracey*, 597 F.3d 140, 146-47 (3d Cir. 2010). "As with the particularity requirement, the

---

[9] Where the authorities desire to have the affidavit sealed, "in order to protect witnesses, for example[,] it must list the items it seeks with particularity in the warrant itself. It is the government's duty to serve the search warrant on the suspect, and the warrant must contain, either on its face or by attachment, a sufficiently particular description of what is to be seized." *United States v. Wecht*, 619 F.Supp.2d 213, 228 (W.D. Pa. 2009) (cleaned up).

primary purposes of this incorporation rule are to limit the officers' discretion as to what they are entitled to seize and inform the subject of the search what can be seized." *Id*. (cleaned up).

Some courts will also allow an affidavit to cure an overbroad warrant even if the affidavit is not expressly incorporated. As one Court summarized:

> We recognize that there are decisions in which an affidavit has been used to save a defective warrant even when it has not been incorporated within that warrant. But the cases fall into two categories. The first embraces those circumstances in which the warrant contains an ambiguity or clerical error that can be resolved with reference to the affidavit. In these situations, it is clear that the requesting officers and the magistrate agreed on the place to be searched or item to be seized, but there is an obvious ministerial error in misidentifying or ambiguously identifying the place or item. Reliance on the affidavit in these circumstances neither broadens nor shrinks the scope of the warrant, but merely rectifies a "minor irregularity."
>
> . . . .
>
> The second category of decisions in which an unincorporated affidavit has been read to modify a search warrant is constituted by cases in which the affidavit is particularized but the warrant is overbroad. So long as the actual search is confined to the narrower scope of the affidavit, courts have sometimes allowed the unincorporated affidavit to "cure" the warrant, or at least have treated the excessive elements of the warrant as harmless surplusage.

*Doe v. Groody*, 361 F.3d 232, 240 (3d Cir. 2004) (cleaned up).

The *Groody* Court cited our Supreme Court's decision in *Commonwealth v. Carlisle*, 534 A.2d 469 (Pa. 1987), as "a good example" of allowing cure through an unincorporated affidavit. In *Carlisle*, law enforcement officers executed a search warrant on a building containing three

separate apartments. Although the police only possessed information of illicit gambling in "Apartment One," the description of the place to be searched in the warrant merely referred to the building without designating a specific apartment. The affidavit of probable cause attached to the application, however, clearly evinced that police were only investigating alleged law-breaking in Apartment One. The defendant challenged the validity of the warrant based upon this alleged lack of particularity. Our Supreme Court, observing that then-applicable Pa.R.Crim.P. 2005 required the affidavit to be attached to the warrant, framed this issue as follows:

> [T]he question which arises is whether the affidavit, which must in some form be attached to the search warrant, may be used to augment the description of place listed on a search warrant. Analytically, the two most obvious approaches to this question are either to construe the affidavit and the warrant together, or to construe only the warrant, without regard to the affidavit. In this case, if the two writings were construed together, the place would be described with sufficient particularity, since the affidavit plainly states that the phones suspected of being used to conduct a lottery were located in Apartment One, not elsewhere. If the documents are to be construed separately, however, the warrant would fail for lack of particularly since the [description] does not contain any reference to Apartment One, but instead appears to authorize a search of the entire building.

*Carlisle*, *supra* at 471-72 (cleaned up).

Ultimately, applying the requisite practical, common-sense approach to construing the warrant, the Court determined that it was appropriate to consider the information contained in the affidavit of probable cause in assessing particularity as follows:

> [I]t is our view that the police officers conducting the search in this case would be aware of the exact location to be searched. They knew that a suspected lottery operation was being conducted at [the building] by use of telephones which were located in Apartment One at that address.  Common sense suggests that this information does not authorize a search of Apartments Two or Three, and, in fact, the only search conducted was a search of Apartment One.  Had any location other than Apartment One been searched based on the affidavit in this case, any items seized from other locations would have been suppressed as having been seized outside the authority of the warrant.

*Id*. at 472-73 (cleaned up).

Thus, **Carlisle** stands for the proposition, recognized by some federal courts, that the limiting language of the supporting documents may cure the warrant's facial defect, even if the affidavit is not expressly incorporated, if the authorities in fact confined their search to the scope of the affidavit rather that exerting the broader authority granted by the warrant itself.

In the cases *sub judice*, the supporting documents were not incorporated by reference into the warrants themselves.  **See**, **e.g.**, **Tracey**, **supra** at 148 ("If [the affiant] intended to incorporate the affidavit into the description of items to be seized, he could have written 'see affidavit,' 'as further described in the affidavit,' or any other words of incorporation.  This requirement is not difficult, yet it went unmet in this case.").  Further,  as the

affidavits of probable cause were sealed, they were not attached to the warrant.[10]

Moreover, while the Commonwealth maintains that the searches of the extracted data were in fact limited in accordance with the affidavits of probable cause, **see** Commonwealth's brief at 29, that claim is belied by the record. As the suppression court explained:

> Upon review of the language in the affidavit, . . . only messages between fraternity brothers and pledges would be subject to seizure. However, the Commonwealth has presented text messages between both [Appellees] and women identified as [Appellees'] girlfriends. It is therefore apparent that the police viewed the scope of the warrant as more broad than that defined in the affidavit.

Suppression Court Opinion, 12/18/18, at 4.

---

[10] The Commonwealth repeatedly asserts that the affidavits of probable cause were attached to the warrants. **See**, **e.g.**, Commonwealth's brief at 20, 28, 29. It also contends that Detective Scicchitano, who obviously had knowledge of the limiting language of his affidavits, was the one to search the files seized from the phones. **Id**. at 18 n.19. However, Detective Scicchitano testified that Detective John Aston "did the majority of the downloading and analyzation of the phones and the message content[.]" N.T. Preliminary Hearing, 6/12/17, at 65. More significantly, the contention that the affidavits were attached to the warrants is belied by the warrants themselves, which indicate that, because the affidavits were sealed, they were **not** attached to the warrant. That they accompanied the warrant as seen by the judge authorizing it or officers executing it misses the point. The focus is not solely on whether the officers were aware of the limitations included in the unincorporated affidavit, but also on whether "the contents of that document [were either] known to the person whose [property] is being searched [or] available for her inspection." **Groh v. Ramirez**, 540 U.S. 551, 557 (2004) (cleaned up).

The certified record supports the suppression court's determination. We reiterate that the affidavit of probable cause indicated an intent to look for only videos taken during the time surrounding Mr. Piazza's injury and its aftermath, along with communications among fraternity members, pledges, and others connected with the crimes being investigated. *See* Response to Motion to Suppress Physical Evidence (Young), 10/16/18, at 5 of Appendix A. Yet, the Commonwealth at the first preliminary hearing offered into evidence messages exchanged between Appellees and their paramours and internet searches conducted through the phones, materials beyond both the scope of the descriptions of items to be seized stated in the affidavits and the scope of probable cause.

Specifically, the Commonwealth offered text messages Mr. Young sent to Madeline Miller after the ambulance took Mr. Piazza away, in which Mr. Young indicated that Mr. Piazza had "looked fucking dead," and Mr. Young expressed concern about his accountability for the events in question and his belief that he would "be the one going to court, paying for an attorney and maybe put in jail." N.T. Preliminary Hearing, 7/10/17, at 19. Detective Scicchitano testified that he ascertained Mr. Young's relationship with Ms. Miller from reading through their text exchanges and observing that they share "intimate discussions" in which "they talk like boyfriend and girlfriend." *Id*. at 17. The Commonwealth also offered numerous messages exchanged between Mr. Casey and his girlfriend, Torrye Zullo. *Id*. at 27-29. Detective

Scicchitano explained that he determined the nature of Mr. Casey's relationship with Ms. Zullo "[b]ased upon the nature of the conversations they had on text messaging." *Id*. at 26.

Additionally, the Commonwealth introduced evidence of Google searches Mr. Casey conducted on his phone to monitor public information about Mr. Piazza's death. *Id*. at 29-31. The affidavit of probable cause provided no basis or request for seizing this type of data, such that this evidence was unquestionably seized pursuant to the warrants' unlimited authority to examine the entire contents of the phones.[11]

_____

[11] We reject the Commonwealth's suggestion that the messages and browser searches were properly recovered by Detective Scicchitano because they were in plain view when he searched the contents of the phones for the itemized files. While searches for materials such as documents necessarily will entail "that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized, responsible officials must take care to assure that searches are conducted in a manner that minimizes unwarranted intrusions upon privacy[.]" *Commonwealth v. Rega*, 70 A.3d 777, 785 (Pa. 2013) (cleaned up). The affidavits of probable cause requested video files and messages among fraternity members and pledges. They stated no facts that suggested that evidence of criminal activity would be located within internet searches or communications with individuals who did not participate in the bid acceptance party. As such, Detective Scicchitano did more than a cursory review of files that were clearly not among those supported by probable cause, reading through Appellees' personal communications with women, who were obviously not fraternity brothers or pledges, closely enough to glean the romantic nature of their relationships with Appellees. These were literal "unwarranted intrusions upon [the] privacy" interests of Appellees outside the scope of the affidavit's particularized description of items and of the extant probable cause. *Id*.

Consequently, we hold that the cases before us do not fall within one of the exceptions to the need for express incorporation of an affidavit of probable cause into a warrant. Instead, they are squarely within the circumstances discussed in *Groh* in which the narrower scope of an unincorporated affidavit fails to serve the purposes of our constitutional particularity requirements. We reiterate the reasoning of the *Groh* Court:

> The fact that the application adequately described the "things to be seized" does not save the warrant from its facial invalidity. The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents. And for good reason: The presence of a search warrant serves a high function, and that high function is not necessarily vindicated when some other document, somewhere, says something about the objects of the search, but the contents of that document are neither known to the person whose home is being searched nor available for her inspection.

*Groh*, *supra* at 557 (cleaned up). Since "in this case the warrant[s] did not incorporate other documents by reference, nor did either the affidavit[s] or the application[s] (which had been placed under seal) accompany the warrant[s]," Detective Scicchitano's affidavits cannot serve to provide the particularity lacking from the faces of the warrants.[12] *Id*. at 558.

As a result, we are left with warrants that expressly authorized the search and seizure not only of the phones, but of each and every file recovered

---

[12] Since the less-exacting particularity provisions of the Fourth Amendment preclude adoption of the Commonwealth's position, it necessarily cannot satisfy the heightened particularity requirements of the Pennsylvania constitution. *Accord Commonwealth v. Kane*, 210 A.3d 324, 333 (Pa.Super. 2019).

therefrom, regardless of type, time of creation, or nexus with any crimes being investigated. Without the limiting language of the affidavit reproduced or incorporated on the face of the warrants, the warrants, with particularity, permitted police to generally rummage through the files recovered from the phones looking for evidence of a crime. Applying the reasoning of **Green**, **Orie**, and **Wecht**, we must conclude that the warrants were unconstitutionally overbroad because there was an "unreasonable discrepancy between the items for which there was probable cause and the description in the warrant[.]" **Orie**, **supra** at 1003 (cleaned up). Therefore, we are constrained to find that the evidence obtained from the effectively warrantless searches was properly suppressed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/23/2022