J-S18038-23

2023 PA Super 121

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| AMIR GREEN | : | |
| | : | |
| Appellant | : | No. 2068 EDA 2022 |

Appeal from the Judgment of Sentence Entered July 26, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004881-2019

BEFORE:   PANELLA, P.J., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED JULY 11, 2023**

Appellant Amir Green appeals the judgment of sentence entered in the Court of Common Pleas of Philadelphia County after the trial court convicted Appellant of carrying a firearm without a license and carrying a firearm on the public streets of Philadelphia without a license.[1] Appellant asserts that the trial court erred in denying his suppression motion when he was subjected to an illegal seizure unsupported by the requisite suspicion. We affirm.

On June 1, 2019, at approximately 8:45 a.m., Philadelphia Police Officers Brian Cash and Michael Haas were on routine patrol in a marked vehicle on the 1200 block of Melon Street. Notes of Testimony (N.T.), 3/22/22, at 6. The officers proceeded to the West Poplar Apartment Complex to investigate complaints of narcotic sales and illegally parked vehicles. N.T. at 8. Officer Haas was familiar with this housing complex as he had been

_____

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S.A. §§ 6106, 6108, respectively.

assigned to work in this district for over ten years and made numerous narcotics and firearms arrests in that area and complex. N.T. at 7.

Officer Cash observed a white Chevrolet Malibu that he believed had been parked in the apartment complex for about two weeks and had not been moved. N.T. at 9-10. The officers pulled up to the vehicle to investigate more closely to see if the vehicle was abandoned. N.T. at 9. When the officers approached on foot, they noticed that the vehicle's inspection stickers were peeling off, the vehicle had body damage, and the odor of burnt marijuana was emanating from the vehicle. N.T. at 9, 14.

While Officer Haas went to the rear of the vehicle to check its license plate, Officer Cash proceeded to the front of the vehicle, as the vehicle's side windows were tinted. N.T. at 9, 14-15. Looking through the front windshield, Officer Cash observed Appellant reclined "all the way back" in the front passenger seat. N.T. at 9. Officer Cash also noticed numerous small vials and small plastic bags, which the officers recognized to be consistent with narcotics packaging for crack cocaine, as well as "the inside of cigars" or "blunt guts" strewn around the vehicle. N.T. at 11-14.

In taking a closer look at Appellant, Officer Cash saw the outline of a firearm in the front pocket of Appellant's tight-fitting sweatsuit. N.T. at 15. Due to the way Appellant was laying back, Officer Cash could see the entire imprint of the firearm. N.T. at 16. Officer Cash alerted Officer Haas that he believed Appellant had a firearm on him and radioed for backup. N.T. at 16.

Officer Cash knocked on Appellant's window in an attempt to speak with him, requested that he step out of the vehicle, and asked to see the paperwork for the vehicle. N.T. at 15-17. Officer Cash surmised that Appellant was pretending to be asleep as he saw Appellant try to slightly open one eye several times to see if the officers were still there. N.T. at 17-18. When backup arrived which included both a police sergeant and lieutenant, the officers tried repeatedly to speak with Appellant through the closed window, but Appellant did not respond. N.T. at 18.

After attempting to speak with Appellant for fifteen minutes and contemplating declaring a barricade and calling SWAT, the police lieutenant directed the officers to break the vehicle's windows to get Appellant out of the car. N.T. at 18-19. Officers recovered a .9 millimeter pistol from Appellant's person and placed him under arrest. N.T. at 21. Ballistics testing subsequently revealed that the weapon was operable.

Appellant was charged with the aforementioned offenses in connection with a possession of the firearm without a license. Appellant filed a motion to suppress the handgun, which the trial court denied after holding a hearing.

Appellant proceeded to a bench trial at which the trial court convicted him of both weapons charges. On July 26, 2022, the trial court sentenced Appellant to two concurrent terms of three years' probation. This appeal followed. Appellant complied with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review:

1. Did the Trial Court commit an error of law by denying [A]ppellant's motion to suppress where the police lacked the requisite reasonable suspicion and probable cause to believe that [Appellant] had engaged in criminal activity?

2. Did the Trial Court commit an error of law by denying [A]ppellant's motion to suppress where the police seized [Appellant] without the requisite reasonable suspicion to believe that he had engaged in any criminal conduct?

Appellant's Brief, at 4.

Appellant's sole claim on appeal is that the trial court erred in denying his suppression motion. We review a trial court's denial of a suppression motion under the following standard:

> [o]ur standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

***Commonwealth v. Johnson***, 146 A.3d 1271, 1273 (Pa.Super. 2016) (citation omitted).

Specifically, Appellant claims the police lacked reasonable suspicion to detain him and investigate further based on an "unparticularized hunch that

- 4 -

the vehicle [Appellant] was sleeping inside was abandoned." Appellant's Brief, at 13. In addition, Appellant claims that he was illegally seized by uniformed officers who commanded that he open the door to his vehicle when officers did not have any indication that Appellant was involved in criminal activity.

The Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from being subjected to unreasonable searches and seizures. *Commonwealth v. Lyles*, 97 A.3d 298, 302 (Pa. 2014). In light of these provisions, our courts have developed three categories of interactions between citizens and police officers:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Way*, 238 A.3d 515, 518–19 (Pa.Super. 2020) (quoting *Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa.Super. 2012) (citation omitted)).

In determining whether a seizure has occurred, courts apply the following objective test:

> [t]o guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave." *Commonwealth v. Strickler*, 563 Pa. 47, 757 A.2d 884, 889 (2000). In evaluating

the totality of the circumstances, our focus is whether, "by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained." *Id.* at 889. In making this determination, no single factor dictates "the ultimate conclusion as to whether a seizure has occurred." *Id.*

*Way*, 238 A.3d at 518–19.

In this case, the officers did not need any level of suspicion to approach Appellant's parked vehicle on foot while on routine patrol and attempt to ask him general questions. It is well-established that "a seizure does not occur where officers merely approach a person in public and question the individual or request to see identification … [as the individual still retains] the right to ignore the police and go about his business." *Lyles*, 97 A.3d at 303 (citations omitted).

Nevertheless, a mere encounter may escalate to an investigate detention if the individual objectively does not feel free to leave and disregard the officer's request. *Commonwealth v. Bathurst*, 288 A.3d 492, 497 (Pa.Super. 2023) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991) ("So long as a reasonable person would feel free 'to disregard the police and go about his business,' ... the encounter is consensual and no reasonable suspicion is required)).

In this case, Appellant's mere encounter with police escalated into an investigative detention when the officers' requests conveyed to Appellant that he was required to comply and open the door to his vehicle. A reasonable person in Appellant's position would not have felt free to leave when several

uniformed, armed officers had responded to the scene and commanded Appellant to roll down the windows of the vehicle or to open the door.

Thus, the officers were required at that point to have reasonable suspicion that Appellant was engaged in criminal activity. "[T]he question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity." *Commonwealth v. Thomas*, 273 A.3d 1190, 1197 (Pa.Super. 2022) (citations omitted).

We agree with the suppression court's finding that this seizure was justified as the officers had reasonable suspicion that Appellant was engaged in criminal activity. Officers approached the vehicle as they believed that Appellant's vehicle was in an abandoned state in light of the peeling inspection stickers and body damage. When the officers inspected the vehicle further, they observed drug paraphernalia in plain view strewn about in the vehicle, noticed the outline of a firearm on Appellant's person, and detected an odor of burnt marijuana. *See Commonwealth v. Barr*, 266 A.3d 25, 41 (Pa. 2021) (finding that despite the legalization of medical marijuana, "the smell of marijuana indisputably can still signal the possibility of criminal activity").

We are not persuaded by Appellant's citation to *Commonwealth v. Adams*, 205 A.3d 1195 (Pa. 2019) as that decision can be distinguished from the instant case. In *Adams*, the Supreme Court held that a police officer did not have reasonable suspicion to justify an investigative detention simply

based on the fact that Adams' vehicle was parked behind a closed business at night as the officer provided no specific facts to support a belief that Adams was involved in criminal activity. *Id*. at 1206.

In contrast, in this case, officers discovered Appellant's vehicle, which they suspected had been abandoned, was parked in an area known for previous narcotics sales, contained drug paraphernalia in plain view, exhibited an odor of marijuana, and was occupied by an individual suspected to be in possession of a firearm.

As such, the suppression court did not err in finding the officers had reasonable suspicion to justify an investigative detention based on the totality of the circumstances that suggested that Appellant was in possession of illegal narcotics and a firearm in a vehicle that was not legally inspected.[2]

For the foregoing reasons, we conclude that the trial court did not err in denying Appellant's suppression motion. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

---

[2] Appellant does not challenge the legality of the seizure of the firearm from his person or his arrest.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/11/2023