J-A13036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JORDAN JEREL LANCE | : | No. 1330 WDA 2023 |

Appeal from the Order Entered October 10, 2023
In the Court of Common Pleas of Clearfield County Criminal Division at
No(s): CP-17-CR-0000173-2023

BEFORE: OLSON, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: July 2, 2024**

In this appeal by the Commonwealth, we are asked to determine whether the trial court erred by suppressing the evidence in this case after concluding that police officers acted without reasonable suspicion. After careful review, we affirm.

The trial court capably set forth the facts of this case as follows:

> On October 6, 2022, at approximately 12:58 AM, Lawrence Township Police Officers [Nathan] Lash and [Zachary] Cowan were on patrol [when] … Officer Cowan observed a brown Kia Soul and ran the registration plate. The vehicle was registered to [Appellee, Jordan Jerel Lance]. Officer Cowan testified that upon running the registration, he became aware that [Lance]'s license was suspended. The [o]fficers activated the emergency lighting on the marked patrol unit and initiated a traffic stop. Officer Cowan testified that upon making contact with the vehicle[,] he detected a "strong odor" of marijuana originating from the vehicle. Officer Lash made contact with Amber Johnson (hereinafter, Johnson), the driver of the vehicle, while Officer Cowan approached [Lance] on the passenger side of the vehicle. Neither Johnson nor [Lance] were wearing safety belts. Officer Lash requested Johnson

provide proof of registration, insurance, and a driver's license. It was determined that there had been insurance, but it had been cancelled due to nonpayment. Johnson never provided Officer Lash with her registration.

[The o]fficers then asked Johnson where she was headed, to which she claimed that she was on her way to Bigler to go "spin." When asked where they were coming from, Johnson claimed that they had just left the home of Danielle Yontosh (hereinafter Yontosh). [The o]fficers were aware that Yontosh is a known drug residence and that Yontosh is a known drug user and has a history of being involved in drug sales. When Officer Cowan inquired about the marijuana odor, [Lance] informed him that he had a medical marijuana card. Upon Officer Cowan's request that [Lance] produce his medical marijuana card, [Lance] 'fidgeted' in the center console. [Lance]'s actions in obtaining his wallet from the center console gave the [o]fficers the impression that he was trying to conceal something. Specifically, [Lance] would not open the console the entire way and held the lid down as he searched for his wallet. Officer Lash went back to the patrol unit and ran [Lance] through the Officer Law Enforcement Mobile System to check for any warrants. This search yielded a non-extraditable warrant from New Jersey for "Dangerous Drugs."

While Officer Lash was running the information, Officer Cowan observed a metal weight in plain view, [and the o]fficers were aware that was used for a digital scale. [Lance] attempted to hide the weight, but later claimed that he used it to weigh his [m]arijuana. Officer Cowan then requested [Lance] exit the vehicle and Officer Cowan conducted a roadside drug interdiction interview. Officer Lash then began questioning Johnson, [and ]when asked about her previous whereabouts for a second time, her account changed. Officer Cowan asked [Lance] to retrieve his [m]edical [m]arijuana out of his backpack to verify that it was in the original dispensary container due to the pervasive [m]arijuana odor. Officer Cowan and [Lance] returned to the vehicle, where [Lance] began to root through his backpack and again [Lance] gave the appearance of attempting to conceal something from the officers. When Officer Cowan requested [Lance] bring the backpack to the patrol unit so [Lance] could get the [m]edical [m]arijuana out, [Lance] refused. Officer Cowan then had [Lance] stop searching through the backpack for the purpose of preserving officer safety, as [Lance] barely unzipped the backpack and was

using only his hand to search the bag to prevent [the ]officers from viewing the contents of the bag.

The [o]fficers requested that [Lance] consent to a search of the vehicle, to which he declined. Officer Lash then requested that Johnson exit the vehicle. Upon her exit of the vehicle, Johnson partially opened the driver side door and slid out as if she was attempting to hide something inside the vehicle. Officer Lash inquired as to whether Johnson had anything on her person that was going to poke, or stab, or hurt the [o]fficer prior to a pat down search as Standard Field Sobriety tests were to be conducted. Johnson first claimed that she had two sticks, but later claimed that they were used syringes that belonged to her brother. [The o]fficers searched Johnson and found no other illegal items on her person. The [o]fficers then informed both Johnson and [Lance] that they were free to leave and that [Lance]'s vehicle would be towed to AJ ROSS garage and that they would be notified upon completion of the search warrant. [The o]fficers secured the vehicle, during which they found a zip-loc [*sic*] bag containing a large quantity of suspected crystal methamphetamine [lying] on the floor by the driver side seat.

Trial Court Opinion and Order (TCO), 10/10/23, at 1-3 (citations to the record omitted).

The Commonwealth charged Lance via criminal complaint on October 11, 2022, with one count each of Possession with the Intent to Deliver (35 P.S. § 780-113(a)(30)), Possession of a Controlled Substance (35 P.S. § 780-113(a)(16)), and Possession of Drug Paraphernalia (35 P.S. § 780-113(a)(32)). The case was bound over for trial following Lance's preliminary hearing, and Lance filed an Omnibus Pretrial Motion on May 11, 2023. Lance's motion argued that the officers did not have reasonable suspicion to conduct the traffic stop. Motion to Suppress, 5/11/23, at 3. Following a hearing on the motion, the trial court asked for briefs on the suppression issue. Thereafter, the court granted Lance's motion to suppress.

The Commonwealth then filed this timely appeal,[1] and both the Commonwealth and the trial court have complied with Pa.R.A.P. 1925. The Commonwealth posits the following question for our review:

> Where police officers possessed specific and articulable facts indicating that two crimes – driving with a suspended license and driving under the influence of marijuana – had occurred, did the suppression court err in concluding that reasonable suspicion for an investigative detention fully was extinguished upon realizing that [Lance] was not driving unlicensed, despite the fact that the officers' suspicion of the DUI offense arose before their suspicion of the other offense was extinguished?

Commonwealth's Brief at 4.

Our standard of review in addressing a challenge to the trial court's granting of a suppression motion is well established. When the Commonwealth appeals from a suppression order, we evaluate only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. *Commonwealth v. Barr*, 266 A.3d 25, 39 (Pa. 2021). We must first consider whether trial court's factual findings are supported by the record, and, if they are, we are bound by those findings. *Id.* Our last task is to determine whether the legal conclusions that the trial court drew from its factual findings are correct. *Id.*; *see also Commonwealth v. Millner*, 888 A.2d 680, 685 (Pa. 2005) (same).

_____

[1] The Commonwealth has included a certification that the order will terminate or substantially handicap the prosecution of this case, as required by Pa.R.A.P. 904(e). Notice of Appeal, 11/14/23.

As a preliminary matter, we note that the trial court failed to announce its findings of fact and conclusions of law following the suppression hearing. *See* Pa.R.Crim.P. 581(I) (stating trial court must enter on record findings of fact and conclusions of law at end of suppression hearing). Where a trial court fails to abide by Rule 581(I), however, this Court may look at the trial court's Rule 1925(a) opinion to garner findings of fact and conclusions of law. *See Commonwealth v. Reppert*, 814 A.2d 1196, 1200 (Pa. Super. 2002). Here, the trial court issued a 1925(a) opinion that adequately relates the court's findings and analysis. Thus, we will review Appellant's issue. *Id.*

The Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from being subjected to unreasonable searches and seizures. *Commonwealth v. Green*, 298 A.3d 1158, 1162 (Pa. Super. 2023). Our Courts have developed three categories of interactions that may occur between ordinary citizens and police officers:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Id.* at 1162-63 (citation omitted).

All parties concede that we are dealing here with the second category of interactions, the investigative stop. *See, e.g.*, *Commonwealth v.*

*Spence*, 290 A.3d 301, 314 (Pa. Super. 2023) (noting that "a motor vehicle stop is generally a second-level interaction, an investigative detention").

> [T]he Fourth Amendment permits an officer to initiate a brief investigative traffic stop when he has a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-418 (1981); *see also Terry v. Ohio*, 392 U.S. 1 (1968). "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Prado Navarette v. California*, 572 U.S. 393, 397 (2014); *United States v. Sokolow*, 490 U.S. 1 (1989).

*Kansas v. Glover*, 589 U.S. 376, 380 (2020) (cleaned up).

Thus, we must consider whether the facts known to the officers in this case at the time of the stop provided the requisite reasonable suspicion of criminal activity. *See Commonwealth v. Jefferson*, 256 A.3d 1242, 1248 (Pa. Super. 2021) ("[T]he fundamental inquiry is an objective one, namely, whether the facts available to police *at the moment of the intrusion* warrant a man of reasonable caution in the belief that the action taken was appropriate.") (citation omitted; emphasis added); *see also U.S. v. Sokolow*, 490 U.S. 1, 12 ("[B]efore detaining an individual, law enforcement officers must reasonably suspect that he is engaged in, or poised to commit, a criminal act *at that moment*.") (emphasis in original) (Marshall, J., dissenting). Reasonable suspicion is measured by what the police knew prior to conducting the search or seizure. *Jefferson*, *supra* (citing *Commonwealth v. Wiley*, 858 A.2d 1191, 1197 (Pa. Super. 2004)). We

conclude that, while the officers initially had reasonable suspicion that the car was being driven by a person who did not have a valid driver's license, which would be a violation of the Vehicle Code, that suspicion dissipated quickly when the officers discovered that Lance was not driving the vehicle, thus eliminating the authority for the traffic stop.

Because reasonable suspicion for a traffic stop is an objective inquiry, we must look at the facts available to the officer in question at the moment of the intrusion to evaluate whether a man of reasonable caution would believe that the action taken was appropriate. **Commonwealth v. Gray**, 784 A.2d 137, 142 (Pa. Super. 2001). We must consider the totality of the circumstances when assessing the factual basis for the stop. **Jefferson**, **supra**. Reasonable suspicion exists only where the officer articulates specific observations which, in conjunction with the reasonable inferences derived from those observations, led him reasonably to conclude that criminal activity was afoot, and that the person stopped was involved with that criminal activity. **Commonwealth v. Cunningham**, 287 A.3d 1, 8-9 (Pa. Super. 2022) (citation omitted).

The Commonwealth argues that Officers Cowan and Lash properly stopped the vehicle after determining that the vehicle was registered to Lance and that Lance did not have a driver's license; further, "the officers lawfully continued their investigation in order to determine whether Johnson was under the influence of marijuana." Commonwealth's Brief at 14. The

Commonwealth asserts that a reasonable person would have concluded, based upon all the circumstances surrounding the traffic stop, that Johnson had recently smoked marijuana while driving. *Id.* In support of that assertion, the Commonwealth notes that Johnson was in a car with a known drug dealer, neither party in the car wore a seat belt,[2] and the passenger slouched in his seat as if he had something to hide. *Id.* at 17-18.

The Commonwealth cites ***Commonwealth v. Dabney***, 274 A.3d 1283 (Pa. Super. 2022), in support of its claim. The Commonwealth maintains that the issue raised in ***Dabney*** was whether officers had probable cause to make an arrest for DUI after, *inter alia*, the officers smelled burnt marijuana coming from a vehicle following a traffic stop for speeding. *Id.* at 1286-87. Notably, the present claim concerns the issue of reasonable suspicion for a traffic stop, not probable cause. Moreover, the vehicle in ***Dabney*** had been stopped for driving at an excessive speed, traveling 93 MPH in a 65 MPH zone. *Id.* at 1285. When Dabney opened the door to the vehicle and spoke to the officer, the officer smelled "a strong odor of raw marijuana" coming from inside the vehicle. *Id.* at 1287. "Other than speeding," the officer had noticed no erratic driving or traffic violations. *Id.*

---

[2] The Commonwealth's reference to Johnson and Lance not wearing seatbelts is unavailing as proof of reasonable suspicion because this conduct constitutes a summary offense *only* when the person not wearing the seatbelt commits at least one other offense. 75 Pa.C.S. § 4581(a)(2)(ii), (b).

Dabney's primary claim involved whether marijuana should continue to be deemed a Schedule I controlled substance after passage of the Medical Marijuana Act (MMA), 35 P.S. §§ 10231.101–10231.2110. In his second appellate issue, Dabney acknowledged the legality of the initial stop based upon his driving at an excessive speed, but argued that the officer initiated a new investigative detention after noticing the marijuana odor. *Id.* at 1292. Specifically, he asserted that the officer "began a new investigative detention when he asked about the marijuana odor and asked Dabney to exit the vehicle." *Id.* Because the only *additional* basis for the detention was the odor of raw marijuana, Dabney argued that the officer instigated an illegal detention not supported by reasonable suspicion. *Id.*

This Court did not grant relief. The panel noted that the odor of marijuana alone does not amount to probable cause to conduct a warrantless search of a vehicle. *Id.* (citing *Barr*, *supra*, at 44). However, the smell of marijuana should be considered as a part of the totality of the circumstances and may, along with other factors, provide justification for the stop. *Id.*[3] Thus, the officer could consider the fact that the car was traveling at 93 MPH, as well as the odor of marijuana, when determining that field sobriety tests were appropriate. Accordingly, the stop in *Dabney* was lawful. *Id.*

---

[3] The *Dabney* decision assumes, *arguendo*, that *Barr's* holding that the smell of marijuana alone does not amount to probable cause for a warrantless search also applies to the issue of reasonable suspicion for an investigatory stop. *Dabney*, 274 A.3d at 1293.

In the case at bar, all parties agree that police initially possessed reasonable suspicion after running the car's registration because the officers knew that Lance, the registered owner of the vehicle, did not have a valid driver's license. *Glover*, *supra*. Contrary to the Commonwealth's argument, however, the possibility of the driver's being unlicensed was the only legal basis for the stop. There was nothing inherently illegal in Johnson's driving a car owned by another (here, Lance) who did not hold a valid driver's license. Failing to wear a seat belt can constitute a summary offense, but it is not an unusual circumstance and only supports a criminal charge if combined with other Vehicle Code violations. 75 Pa.C.S. § 4581(a)(2)(ii), (b). Moreover, there is nothing inherently illegal in a passenger in a vehicle slumping in his seat. The Commonwealth's additional justifications for the stop do not amount to any valid reason for suspicion.

Officer Gorman specifically noted that he assumed that Lance was driving the vehicle because it was dark, and the officers could not see a passenger in the vehicle. N.T. Omnibus Pre-Trial Motion Hearing, 6/30/23, at 17. When asked, Officer Gorman explained: "[T]he reasonable suspicion that [Lance] was operating the vehicle is the reason we stopped the vehicle." *Id.* at 18. Critically, the officers had observed no Vehicle Code violations. *See* N.T. Preliminary Hearing Transcript, 2/14/23, at 10 ("[Q:] [W]as the vehicle doing anything suspicious, was it swerving, or any traffic violations? Anything like that to make you think is someone drunk or driving or anything? [A:] No,

not at that point.").[4] Thus, we conclude that the only possibly valid reason for the stop given by officers was the smell of marijuana coming from the car. Yet this is not enough.

We conclude that the officer's suspicion that the vehicle was being driven by a person who did not have a valid driver's license ended once he saw Lance was in the passenger seat and not the driver's seat. For the investigative stop to be valid, therefore, the officer needed some other indication of reasonable suspicion that criminal activity was afoot to validate the investigative detention. *See Commonwealth v. Strickler*, 757 A.2d 884, 889 (Pa. 2000). Further, any investigative detention may continue only so long as is necessary to confirm or dispel the officer's suspicion. *Id.* Once suspicion is dispelled, so too is the authority for the investigative detention.

In the case at bar, the Commonwealth's only additional rationale for the investigative stop was the smell of marijuana. Yet, our Supreme Court found in *Barr*, *supra*, that the smell of marijuana, alone, no longer supports an inference of illegality. *Barr*, 266 A.3d at 41. The Court stated:

> We conclude that the [Medical Marijuana Act] makes abundantly clear that marijuana no longer is *per se* illegal in this Commonwealth. Accordingly, the enactment of the MMA eliminated this main pillar supporting the "plain smell" doctrine as applied to the possession or use of marijuana. Indeed, so long as a patient complies with the dictates of the MMA, that person can legally possess and consume various forms of medical marijuana,

---

[4] At the hearing on the motion to suppress, the parties admitted the transcript of the preliminary hearing into evidence and stipulated to its authenticity. N.T. Omnibus Pretrial Motion Hearing, 6/30/23, at 5.

including the plant itself. Accordingly, *the smell of marijuana alone cannot create probable cause to justify a search under the state and federal constitutions.*

*Id.* (emphasis added). Of course, as the ***Barr*** Court recognized, marijuana use is highly regulated, and those who use the substance without a valid Medical Marijuana Card still may violate the Controlled Substances Act. ***Id.*** Thus, the smell of marijuana indisputably can still be a factor in assessing the possibility of criminal activity. Given this dichotomy, our Supreme Court concluded that the odor of marijuana may be a factor, but not a stand-alone one, in evaluating the totality of the circumstances for purposes of determining whether police had probable cause to conduct a warrantless search. ***Id.***

In conclusion, the officers' reasonable suspicion of criminal activity occurring in this case ended when they realized that Lance, the owner of the vehicle and the one with the suspended license, was not driving. At that point, the officers should have let the vehicle go on its way. Had the officers observed any additional violations of the Vehicle Code, even the running of a stop sign, our decision might be different. But the officers here had the smell of marijuana, nothing more. Under ***Barr***, this is insufficient. Accordingly, we conclude that the trial court here properly granted the motion to suppress.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 07/02/2024