J-A11002-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                      :            PENNSYLVANIA

                    Appellant       :

                              :

                              :

              v.                 :

                              :

                              :

ALBERTO CRUZ                :     No. 1477 MDA 2023

Appeal from the Order Entered September 21, 2023
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0001520-2023

BEFORE:  BOWES, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.:            **FILED: AUGUST 12, 2024**

The Commonwealth of Pennsylvania appeals the trial court's interlocutory order granting Alberto Cruz's suppression motion.  We vacate and remand for further proceedings.

We glean the following from the certified record.  On March 20, 2023, the Reading City Police Department coordinated a violent crime reduction detail around the intersection of Front Street and Elm Street.  That portion of the city "has historically been . . . a very violent area."  N.T. Suppression, 8/1/23, at 20.  However, the assignment on that day was specifically in response "to a lot of shots calls in that area where [police] had recovered casings and patrol had also chased a few people and arrested them with firearms."  *Id*.  Reading City Criminal Investigator Timothy Morris participated in the detail by patrolling in an unmarked police car equipped with interior lights.  He was wearing a marked police vest.  According to Investigator

Morris, a person could see his police attire and the interior emergency lights through the tinted windows of his vehicle from a distance of fifteen to twenty feet.

As Investigator Morris drove north on North Front Street, he observed Appellee, whom he did not recognize at the time, cross North Front Street from West Elm Street to Elm Street.[1]  Appellee was wearing a zip-up hoodie with the hood over his head and a black facemask pulled up to just below his eyes.  The officer noted the oddity of this attire both in its concealment and given the sunny, sixty-five-degree weather.  Appellee kept his right hand inside his front hoodie pocket as he continued to walk east on the southern sidewalk in the 100-block of Elm Street.  Investigator Morris parked his vehicle along the curb of that same stretch of sidewalk.  As he parked, Appellee stepped off the sidewalk, walked behind the vehicle, and crossed into the middle of Elm Street, still heading east.  When Investigator Morris opened his

_____

[1] Appellee presented a Google Maps image of the relevant area at the suppression hearing.  **See** N.T. Suppression, 8/1/23, at 36 (Exhibit D-1).  We provide the following snapshot of a Google Maps image as a higher-quality substitute for reference within this writing:



door, Appellee ran "past [Investigator Morris] in the middle of the street" towards the opposite sidewalk and in the direction of Pear Street.  *Id*. at 17. While running, Appellee removed a firearm from his hoodie pocket and placed it in his pants pocket.  At that point, Investigator Morris ordered Appellee to stop.  He refused to comply, and a foot chase ensued.

During the subsequent pursuit, Appellee threw the firearm onto the porch of a residence on Pear Street and continued to flee.  He was ultimately apprehended by other officers a block away and the firearm was secured.  The police determined that Appellee was not eligible to obtain a license to carry a concealed firearm because he was eighteen years old.  Additionally, the firearm belonged to his cousin, who had reported it missing earlier that day.

Based on the foregoing, the Commonwealth charged Appellee with carrying a firearm without a license, evading arrest or detention on foot, theft by unlawful taking, and receiving stolen property.  He filed a suppression motion alleging, *inter alia*, that the Commonwealth obtained the firearm as the result of Investigator Morris unlawfully seizing him pursuant to Article 1, § 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution without reasonable suspicion or probable cause.  **See** Omnibus Pretrial Motion, 6/5/23, at ¶¶ 22-23.  The court held a hearing, at which the Commonwealth presented testimony from Investigator Morris and

the owner of the firearm. Appellee did not call any witnesses. After taking the matter under advisement, the court granted the suppression motion.[2]

The Commonwealth timely filed its notice of appeal, certifying pursuant to Pa.R.A.P. 904(e) that the order to grant Appellee's motion to suppress evidence terminated or substantially handicapped its prosecution of the case. The court directed the Commonwealth to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal and the Commonwealth complied. In lieu of a Rule 1925(a) opinion, the court referred us to its findings of fact and conclusions of law accompanying its order granting Appellee's suppression motion. The Commonwealth raises the following issue:

> Did the suppression court err by suppressing evidence lawfully seized by law enforcement after an investigative detention supported by reasonable suspicion under the totality of the circumstances, including but not limited to, the law enforcement officer's initial observations of [Appellee], the high crime area the encounter occurred in, and [Appellee]'s unprovoked flight from a clearly marked law enforcement officer?

Commonwealth's brief at 4.

Our standard of review is well-settled:

> We review trial court suppression orders to determine whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record. In reviewing an appeal by the

---

[2] Appellee had simultaneously sought *habeas corpus* relief in his omnibus pretrial motion. The court held that the petition in abeyance for thirty days upon granting the suppression motion. **See** Order, 9/21/23. The certified record indicates that a status hearing was scheduled for October 30, 2024, but it was cancelled due to the filing of the instant appeal.

Commonwealth of a suppression order, we may consider only the evidence from the defendant's witnesses along with the Commonwealth's evidence which remains uncontroverted. Our scope of review of suppression court factual findings is limited to the suppression hearing record. We, however, are not bound by a suppression court's conclusions of law; rather, when reviewing questions of law, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Young*, 287 A.3d 907, 915–16 (Pa.Super. 2022) (cleaned up). Since Appellee presented no witnesses, the evidence consists of the uncontradicted testimony of Investigator Morris. While the trial court did not make an express finding as to Investigator Morris's credibility, it relied upon his testimony in making its findings of fact.

Turning to the pertinent legal principles, we begin by observing that Article 1, § 8 of the Pennsylvania Constitution protects people from unreasonable searches and seizures by law enforcement. *See* Pa. Const. art. 1, § 8. The reasonableness of a seizure depends upon the degree of interference with the person's liberty and the concomitant level of suspicion the police must have. "Fourth Amendment jurisprudence has led to the development of three categories of interactions between citizens and the police[:]" mere encounters, investigative detentions, and custodial detentions. *Commonwealth v. Raglin*, 178 A.3d 868, 871-72 (Pa.Super. 2018) (cleaned up). Mere encounters seek to gather information but do not compel people to respond and, therefore, do not require any level of suspicion. *Id*. at 872. Investigative detentions, however, "must be supported by a reasonable suspicion" of criminal activity because they compel "a suspect to

a stop and a period of detention[.]" ***Id***. (cleaned up). Finally, custodial detentions, which are the equivalent of an arrest, require probable cause. ***Id***.

To ascertain whether the seizure in the case *sub judice* passed constitutional muster, we must first determine at what point the interaction required either reasonable suspicion to support an investigative detention or probable cause for a custodial detention. The trial court found that based upon Investigator Morris's reaction when Appellee fled, Appellee was not free to leave when the officer parked his vehicle to approach Appellee. Thus, while not a model of clarity, it appears that the court concluded the initial approach, *i.e.*, the parking of the vehicle, "was an investigatory detention." Findings of Fact and Conclusion of Law, 9/21/23, at 4. The court then found that Investigator Morris pursued Appellee based upon suspected firearm "possession in an area being targeted because of reported gun violence and his flight." ***Id***. at 5. However, since Investigator Morris initially approached Appellee solely on a suspicion that he possessed a firearm, and carrying a firearm in Pennsylvania is not "inherently illegal[,]" it held that "[t]he seizure of the evidence was the direct product of the improper stop." ***Id***. at 5.

Our review of the record reveals that the trial court's conclusions were erroneous. Investigator Morris did not initiate an investigative detention by parking his vehicle and opening his door to speak with Appellee. Had Investigator Morris spoken to Appellee, such conduct would have only constituted a mere encounter requiring no level of suspicion. ***See***

*Commonwealth v. Green*, 298 A.3d 1158, 1163 (Pa.Super. 2023) (holding that "the officers did not need any level of suspicion to approach [Green's] parked vehicle on foot while on routine patrol and attempt to ask him general questions"). However, because Appellee ran before Investigator Morris could address him, not even a mere encounter had occurred by that point.

Rather, the evidence adduced at the suppression hearing established that the encounter with Appellee became an investigative detention once Investigator Morris ordered Appellee to stop and began to chase him. *See Commonwealth v. Roberts*, 133 A.3d 759, 772 (Pa.Super. 2016) (concluding Roberts was subject to an investigative detention when he fled in response to police questioning during a mere encounter and the police chased him). By misconstruing when the investigative detention began, the trial court curtailed which facts could be considered in determining whether reasonable suspicion existed. Instead, it should have looked at the totality of the circumstances present immediately prior to the chase to analyze whether Investigator Morris had reasonable suspicion to seize Appellee.

Since we review the trial court's legal conclusions *de novo*, we address whether, when looking at the proper time frame and totality of the circumstances, Investigator Morris had reasonable suspicion to seize Appellee. *See Young*, 287 A.3d at 915–16. Our Supreme Court has outlined thusly the test for determining whether an officer possesses sufficient reasonable suspicion to warrant an investigative detention:

Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to specific and articulable facts leading him to suspect criminal activity is afoot. In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

. . . .

The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances.

*Commonwealth v. Holmes*, 14 A.3d 89, 95–96 (Pa. 2011) (cleaned up, emphasis omitted).

Here, the uncontradicted testimony established the following set of facts at the moment preceding Investigator Morris's command to stop. First, Appellee was dressed in clothing that was inconsistent with the temperature and designed to conceal his identity. Second, Investigator Morris suspected, based upon his experience and the way Appellee was holding his hand in his pocket, that Appellee was carrying a firearm. Third, Investigator Morris testified that despite the tinted windows on the unmarked vehicle, it was readily apparent as a police car when observed from fifteen to twenty feet away, and that one could identify his police vest from the same distance. He did not specifically see Appellee look into the vehicle, but he did observe Appellee vacate the sidewalk along which he was parking his vehicle.

- 8 -

Additionally, Appellee walked behind the unmarked vehicle towards the opposite sidewalk and, as Investigator Morris opened his door, ran along the length of the vehicle, past the officer. As he began to run, Appellee confirmed Investigator Morris's suspicion that he possessed a firearm by moving a firearm from his hoodie pocket to his pants pocket. Finally, all of this occurred not only in a limited intersection known for violent firearms crimes generally, but in a particular location Investigator Morris was patrolling as part of a crime reduction detail in response to recent firearms-related calls.

In his suppression motion, Appellee summarily contended that he was seized without reasonable suspicion or probable cause, and that therefore his abandonment of the firearm was coerced. **See** Omnibus Pretrial Motion, 6/5/23, at ¶¶ 16, 22-23. In argument to the suppression court and again on appeal, Appellee maintains that "[n]o evidence was presented which suggested that Appellee was even aware of the police presence when he began to run across the street." Appellee's brief at 12. Citing **Commonwealth v. Washington**, 51 A.3d 895 (Pa.Super. 2012), he contends that "[u]nprovoked flight, even in a high crime area, without more[,] is insufficient to give rise to reasonable suspicion to justify an investigatory stop where nothing establishes that the defendant knew he was running from the police." **Id**. at 13 (cleaned up). In **Washington**, we held that flight in a high-crime area is not enough to establish reasonable suspicion where "[t]he testimony by [the officer] and the finding by the trial judge are both missing the crucial element that

Washington was knowingly running from the police." ***Washington***, 51 A.3d at 899 (cleaned up). Critically, the suppression court in that case made a factual finding, supported by the record, that Washington fled the scene **before** police arrived, *i.e.*, without knowledge of the police presence.

The Commonwealth, meanwhile, compares the instant case to ***Commonwealth v. Moore***, 217 A.3d 416, 2019 WL 2184974 (Pa.Super. 2019) (non-precedential decision), where the suppression court found that the defendant knew he was fleeing from police when he ran. The relevant facts supporting that inference included the following: (1) the officers were investigating drug sales at a particular intersection in a high-crime area; (2) Moore adjusted his waistband and grabbed what the officers believed to be a firearm based upon their experience and observation of a protruding handle; (3) the officers approached Moore in an unmarked vehicle and in plain clothes with police vests; (4) Moore abruptly changed course to walk away from the vehicle; and (5) when the vehicle stopped alongside Moore and the officers rolled down their windows, Moore fled. ***Id***. at \*4. Upon review, we affirmed the denial of Moore's suppression motion and found the case distinguishable from ***Washington***.

In the case *sub judice*, the trial court cited ***Washington*** in its conclusions of law, but seemingly only in the context of setting forth various legal precedents. **See** Findings of Fact and Conclusion of Law, 9/21/23, at 4. Moreover, perhaps because it found that the investigative detention preceded

- 10 -

the chase, the court did not make a specific finding as to whether Appellee was aware of the police presence prior to running. This Court does not conduct fact finding of its own. *See Commonwealth v. Sharaif*, 205 A.3d 1286, 1289 (Pa.Super. 2019). As our Supreme Court has noted:

> [I]n the suppression context, appellate courts do not simply comb through the record to find evidence favorable to a particular ruling. Rather, appellate courts look to the specific findings of fact made by the suppression court. Those findings are dependent on the suppression court's credibility determinations. A suppression court may find some evidence favorable to the Commonwealth to be credible, and other evidence favorable to the Commonwealth to be incredible. Only after the court assesses and weighs all of the facts may the court issue conclusions of law specifically relating to those findings of fact.

*In re L.J.*, 79 A.3d 1073, 1085 (Pa. 2013).

Stated simply, the trial court's failure to make a finding as to this fact has impeded our review because we cannot say on the record before us that the firearm should have been suppressed as a matter of law. *See Sharaif*, 205 A.3d at 1289 (concluding that without findings of fact or a Rule 1925(a) opinion, "we are unable to determine what facts and legal bases [the suppression court] used to determine that suppression was warranted"). Accordingly, we vacate the order granting suppression and remand the matter for the trial court to (1) make a factual finding as to whether Appellee was aware of the police when he ran and, (2) reconsider whether, based upon the totality of the circumstances present before Investigator Morris commanded Appellee to stop, the officer possessed reasonable suspicion that criminal

activity was afoot.[3] **See Commonwealth v. Landis**, 89 A.3d 694, 703 (Pa.Super. 2014) (vacating suppression order and remanding for "reconsideration of the evidence in light of the probable cause standard and the filing of a statement of its findings of fact and conclusions of law" (cleaned up)).

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/12/2024

---

[3] Unlike **Sharaif**, there is no indication in the certified record that the suppression judge has left the bench. Similarly, the passage of time has not been so great as to render the existing record cold for the suppression court. Thus, we do not remand for a new suppression hearing.