J-S43007-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TALEEM BROWN | : | |
| | : | |
| Appellant | : | No. 612 EDA 2025 |

Appeal from the Judgment of Sentence Entered December 30, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005953-2023

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY KUNSELMAN, J.: **FILED FEBRUARY 6, 2026**

Taleem Brown appeals from the judgment of sentence imposed after he was convicted of three violations of the Uniform Firearms Act.[1] He challenges the denial of his motion to suppress evidence. We affirm.

Philadelphia Police Officer Brian Rosenbaum charged Brown with the above offenses based on the recovery of a firearm in a traffic stop on August 6, 2023, where Brown was a backseat passenger. The charges were held for court, and Brown moved to suppress the firearm. The suppression court heard the motion on May 13, 2024. The Commonwealth presented the testimony of Officer Rosenbaum and body-worn camera footage.

_____

[1] 18 Pa.C.S. §§ 6105(a)(1) (persons not to possess firearms), 6106(a)(1) (carrying a firearm without a license), and 6108 (carrying a firearm on the streets of Philadelphia).

The suppression court later recounted the facts it found from the hearing.[2]

> During the early evening of August 6, 2023, Officer Rosenbaum and his partner, Officer McConnell, were on routine patrol together in Philadelphia in an unmarked patrol car. At approximately 6:55 p.m., Officer Rosenbaum saw a silver Volkswagen Passat turn into a Wendy's parking lot near the 6000 block of North Broad Street. Officer Rosenbaum observed that the Passat appeared to have illegal tinting on its windows, in violation of the [] Vehicle Code. The officers then followed the Passat into the parking lot and activated the patrol car's lights and sirens. After the Passat stopped, Officer Rosenbaum asked the driver to pull into a parking spot. Once the Passat was in a parking spot, the officers approached the car, which was occupied by three adults and two children. The video shows that a third officer was also present and accompanied Officer Rosenbaum and Officer McConnell to the Passat to conduct the stop.

> As Officer Rosenbaum approached the Passat and looked through the back windshield, he saw the front male passenger turn around and hand a bag to a person sitting in the rear passenger seat, who was later identified as [Brown]. Officer Rosenbaum was able to see the movements in the car because the back windshield was less tinted than the side windows. Officer Rosenbaum had to use his flashlight to see into the rear passenger side window, which was initially closed when Officer Rosenbaum arrived at the car. At the same time, Officer McConnell had gone to speak to the Passat's driver and request their driver's license and vehicle registration. Officer Rosenbaum immediately became alarmed about the possibility that a weapon was in the bag that had been passed to [Brown]. Officer Rosenbaum had concerns about the officers' safety and the possibility that they were walking into an ambush. His concerns were based in part on his knowledge that the officers were in a very violent area. Officer Rosenbaum himself had recovered up to two dozen handguns in

---

[2] "[T]he filing of a 1925 opinion is no substitute for the failure to make findings of fact and conclusions of law on the record at the conclusion of a suppression hearing in accordance with Pa.R.Crim.P. 581(I)." **Commonwealth v. Grundza**, 819 A.2d 66, 68 n.1 (Pa. Super. 2003). However, appellate review may be possible based on the facts provided in such an opinion. **See id.**

that specific area. He also estimated that he had recovered hundreds of firearms from inside of bags.

Due to his safety concerns, Officer Rosenbaum reached into the Passat and removed a bag from the rear passenger area by reaching through the car's open side window. Because the bag felt heavy, Officer Rosenbaum looked into the bag to confirm a weapon was not inside. The bag did not have any weapons.

While Officer Rosenbaum was looking through the bag, the passenger in the front seat became irate and began berating the officers. The front passenger also scolded [Brown] for lowering the car's window. As the front passenger continued to argue with the officers, [Brown] told the front passenger to shut up.

Officer Rosenbaum then began speaking with [Brown] and asked him if there was anything in the car the officers should know about. When asked the question, [Brown] initially shook his head no without saying anything verbally. It appeared to Officer Rosenbaum that [Brown] did not want to answer the question. Officer Rosenbaum then asked [Brown] about the bag that had been passed back to [him]. [Brown] responded, "I don't know." Officer Rosenbaum found [Brown's] response to have been strange, given that Officer Rosenbaum was certain that he saw a bag get passed back to [Brown] when he approached the car. Officer Rosenbaum also observed that [Brown's] chest was rising heavily and that [Brown] appeared to be nervous.

[Brown] then picked up a small red and blue children's backpack and showed it to Officer Rosenbaum. Officer Rosenbaum opened the rear door to frisk the smaller children's bag but did not feel any weapons inside it. However, with the rear door open, Officer Rosenbaum could see for the first time that [Brown] was holding a shoulder bag wedged between his arm and hip. Officer Rosenbaum observed that [Brown] held the bag in a way that seemed as if [Brown] was attempting to conceal it. Officer Rosenbaum then picked up the shoulder bag, which was heavy, and felt the weight and shape of an item that Officer Rosenbaum immediately recognized to be a handgun, based in part on his 18 years of experience with firearms. Officer Rosenbaum reached into the shoulder bag and pulled out a .40 caliber Smith and Wesson handgun. The gun had an extended magazine and was loaded with 21 live rounds of ammunition.

A total of approximately two minutes and ten seconds passed from the time the officers first approached the Passat to

the time Officer Rosenbaum discovered the firearm in [Brown's] shoulder bag. Officer McConnell was still in the process of attempting to obtain information from the driver of the Passat when Officer Rosenbaum discovered the firearm. Officer Rosenbaum estimated that the officers learned [Brown] did not have a permit to carry the firearm approximately one to two minutes after Officer Rosenbaum's discovery of the firearm.

Suppression Court Opinion, 5/5/25, at 2–5 (record citations omitted).

Brown filed a brief in support of suppression on May 24, 2024. On June 3, 2024, the suppression court denied Brown's motion.

The case proceeded to a non-jury trial on August 16, 2024. The trial court found Brown guilty of the above crimes. On December 30, 2024, the trial court sentenced Brown to 2 to 4 years of confinement for all offenses, to be run concurrently.

Brown filed post-sentence motions, which the trial court denied. Brown timely appealed. Brown, the suppression court, and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Brown maintains one issue for review:

Did the [suppression] court err in denying Taleem Brown's motion to suppress a firearm, as it was (1) fruit of an illegal car stop and (2) seized from a bag carried on his person pursuant to an illegal frisk performed without reasonable suspicion that he was armed and dangerous?

Brown's Brief at 3.

We review the denial of a suppression motion to determine "whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Green*, 298 A.3d 1158 (Pa. Super. 2023) (quoting *Commonwealth v.*

- 4 -

*Johnson*, 146 A.3d 1271, 1273 (Pa. Super. 2016)).  The scope of our review is the record from the suppression hearing.  ***Commonwealth v. Knupp***, 290 A.3d 759, 767 (Pa. Super. 2023) (citing ***In re L.J.***, 79 A.3d 1073, 1087 (Pa. 2013)).

Brown first claims that the traffic stop was illegal.  He contrasts cases in which police witnesses described their observations of window tint to support findings of probable cause.  ***Cf. Commonwealth v. Prizzia***, 260 A.3d 263, 269 (Pa. Super. 2021) (citing  a trooper's testimony that the windows were so darkly tinted that he could not see inside); ***Commonwealth v. Postie***, 110 A.3d 1034, 1040 (Pa. Super. 2015) (relying on a trooper's testimony that when following a car whose owner he had previously cited for window tint, he could not see the driver through the rear window).  Brown argues that here, the evidence did not establish that the Passat's windows were illegally tinted.

Under Pennsylvania law, the quantum of cause required for a vehicle stop depends on the nature of the offense: reasonable suspicion is required for an offense that requires further investigation, and probable cause is required "when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation."  ***Commonwealth v. Feczko***, 10 A.3d 1285, 1290–91 (Pa. Super. 2010) (*en banc*).   To establish reasonable suspicion, an officer must indicate "specific and articulable facts" that led him to reasonably suspect a violation.  ***Commonwealth v. Farnan***, 55 A.3d 113, 116 (Pa. Super. 2012) (quoting ***Commonwealth v. Holmes***, 14 A.3d 89, 95–96 (Pa. 2011)).  The factors supporting reasonable suspicion "need not rule

- 5 -

out the possibility of innocent conduct." ***Commonwealth v. Garcia***, 311 A.3d 1138, 1145 (Pa. Super. 2024) (quoting ***United States v. Arvizu***, 534 U.S. 266, 277 (2002)).

The Vehicle Code generally prohibits window tint based on whether a person can see into a vehicle: "No person shall drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle." 75 Pa.C.S. § 4524(e)(1). A traffic stop for window tint thus requires probable cause if a police officer can "discern, from his initial observation" that he cannot see through a tinted window; it requires reasonable suspicion if the officer must investigate further to determine if the tint violates subsection 4524(e)(1). ***Prizzia***, 260 A.3d at 267–69 & 269 n.2.

Here, Officer Rosenbaum testified that he stopped the Passat "for illegal tint." N.T., 5/13/24, at 7. He explained that the rear window was "slightly tinted" and the side windows "were a little bit more tinted." ***Id.*** at 10. He testified that when he was approximately 15 feet from the Passat, he could not see the color of the bag that was passed from the front to the back, as the windows were tinted. ***Id.*** He explained that he used his flashlight to see through the tinted rear side window. ***Id.*** at 19. On cross-examination, Officer Rosenbaum acknowledged from the video of the stop, "You can see slightly" through that window. ***Id.*** at 25–26.

The suppression court credited Officer Rosenbaum's testimony to conclude that he had reasonable suspicion to stop the Passat for window tint.

Suppression Court Opinion, 5/5/25, at 7. We agree that this standard applied to the stop, as the officer's initial observations that the Passat had tinted windows did not establish that the tint violated subsection 4524(e)(1). We further agree that Officer Rosenbaum's description of the varying levels of tint between the windows and the necessity to use a flashlight to see in the side window support his reasonable suspicion that the tint was illegal. Therefore, the stop was valid, and Brown's first challenge to the suppression ruling fails.

Brown next claims that the officer's frisk of his shoulder bag was illegal. He contends that the circumstances, including being a passenger in a car with young children pulling into a Wendy's parking lot in daylight, did not give rise to a reasonable suspicion that he was armed and dangerous at the time of the stop. Regarding the bag passed to him from the front of the Passat, Brown argues any suspicion was negated by frisking that bag prior to frisking the shoulder bag.

A frisk for weapons requires a reasonable suspicion that the subject of the frisk is armed and dangerous. *Commonwealth v. Miller*, 333 A.3d 470, 477 (Pa. Super. 2025) (ultimately citing *Arizona v. Johnson*, 555 U.S. 323, 326–27 (2009)). The officer must articulate specific facts, given the totality of the circumstances, to support this reasonable suspicion. *Id.* at 478. Because the purpose of a frisk "is to dispel any fear that the stopped suspect is armed and dangerous," its scope is "limited to that necessary for the discovery of weapons." *Interest of T.W.*, 261 A.3d 409, 421 (Pa. 2021); *Commonwealth v. Zhahir*, 751 A.2d 1153, 1158 (Pa. 2000).

Notably, a traffic stop of a vehicle with (suspected) illegally tinted windows raises the specter of danger to the officer who is unable to see the actions of the occupants inside. *Commonwealth v. Murray*, 936 A.2d 76, 79–80 (Pa. Super. 2007) (citing *United States v. Stanfield*, 109 F.3d 976, 981 (4th Cir. 1997)). Rather than "*per se* give rise to reasonable suspicion" that the occupants of the vehicle are armed and dangerous, however, tinted windows are one factor to be considered in the context of the officer's training and experience. *Commonwealth v. Cartagena*, 63 A.3d 294, 304–05 & 305 n.26 (Pa. Super. 2013) (*en banc*).

Here, Officer Rosenbaum was able to see through the less-tinted rear window of the Passat, reducing the danger posed by window tint alone. Yet, as Officer Rosenbaum observed, a front seat occupant passed a bag back to Brown. Officer Rosenbaum, who was aware of the guns recovered in the area of the stop and who was experienced with guns being concealed in bags, considered that the three adults in the Passat could have concealed weapons and pose a threat.

We reject the inference that the possibility of danger was limited to the bag that was passed back, or that finding no weapons in the first bag exhausted the purpose of the frisk. The scope of the permissible frisk extended to the locations in Brown's reach where a gun could be concealed, including Brown's shoulder bag. Moreover, Officer Rosenbaum became more suspicious when asked about the first bag and Brown responded, "I don't know." In the context of the risk of a concealed weapon, Officer Rosenbaum

could reason that Brown was concealing the location of the weapon. Thus, under the totality of the circumstances here, the frisk of that bag was permissible. Brown's challenge to the denial of suppression fails.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/6/2026